The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the addition of finding of fact number 13 and minor technical modifications.
* * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties pre-trial agreement is incorporated herein by reference.
2. Plaintiff's average weekly wage at all times relevant to this claim was $304.
3. Depositions of Bobby Whitehead, Dr. John Hammer, Dr. Nelson Macedo, and Dr. T. Craig Derian are made a part of the evidentiary record.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction of this claim, all parties being bound by and subject to the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employee-employer relationship existed between plaintiff Bobby Blackston and the defendant-employer B. Klitzner Son.
3. Plaintiff's average weekly wage of $304 yields a compensation rate of $202.68.
4. Travelers Insurance Company was the carrier on the risk as of May 26, 1992.
5. Plaintiff is a high school graduate who was born on December 10, 1949. In April 1986, plaintiff began working for the defendant B. Klitzner Son, a wholesale business which distributes shoes.
6. In September 1988, plaintiff sustained a compensable injury by accident in the course of his employment with the defendant-employer. As a result of the accident, plaintiff sustained an injury to his back at the L3-4 level. In June, 1990, plaintiff underwent a decompression, stabilization, and fusion at L3-4, with instrumentation, which was performed by Dr. T. Craig Derian. Dr. Derian anticipated that plaintiff would be unable to return to work for twelve to twenty-four months following the surgery.
7. On January 17, 1991, after examining plaintiff, Dr. Derian was of the opinion that plaintiff should be able to return to work in the next two months with restrictions of no lifting of greater than 35 pounds, avoiding repetitive bending, stooping, and lifting, allowing frequent position changes and breaks as necessary. Dr. Derian requested a follow-up with plaintiff in two months.
8. Plaintiff returned to work with defendant-employer on March 11, 1991 as an UPS systems operator. Defendant-employer indicated that this job was within Dr. Derian's restrictions.
9. Plaintiff was seen again by Dr. Derian on March 21, 1991. At that time, plaintiff had reached maximum medical improvement and sustained a thirty percent permanent partial impairment to his back.
10. As an UPS systems operator, plaintiff worked in shipping and receiving. His duties included unloading packages received from UPS and Roadway, opening the packages and counting the contents, and repackaging items for shipment. The repackaging involved placing the boxes of shoes into packages or cartons, sealing the cartons and placing the cartons on a scale which was attached to a computer, then using the computer to generate mailing slips to be affixed to the cartons, and finally removing the cartons from the scales and stacking them on the floor.
11. B. Klitzner Son received 70 to 100 cartons on a typical day. While many of the cartons weighed around 30 pounds, many weighed more than 35 pounds. Many of the cartons weighed between 35 and 45 pounds, with some weighing as much as 58 pounds. Most of the incoming packages indicated their weight on the shipping label. However, plaintiff could not know the weight of the cartons he repackaged to ship out until after he actually placed these cartons on the scale to be weighed.
12. While performing his duties, plaintiff was required to lift repeatedly, bend at the waist to set the boxes down, and stoop to pick them up. Therefore, the job was not within the restrictions outlined by Dr. Derian. Although plaintiff requested assistance from the warehouse supervisor, Sam Pullen, it was rarely provided, and then only during training or when the employer received special shipments of about 300 or more packages per day. On a day-to-day basis, plaintiff was performing tasks which exceeded the limitations placed upon him by Dr. Derian.
13. On June 18, 1991, plaintiff entered into an Agreement of Final Settlement and Release whereby he agreed to accept $15,000.00 in full and final settlement of this worker's compensation claim. The Agreement was approved by the Industrial Commission on July 16, 1991. Deputy Commissioner Cramer took judicial notice of the Agreement and Order and the parties admitted to the prior compensable claim and subsequent settlement.
14. May 26, 1992 was a heavy freight day. After returning from lunch, plaintiff had counted the contents of a package of shoes and repacked them for shipping. As he lifted the third carton of shoes to stack it, he felt a pull in his lower back. Plaintiff fell to the floor with the carton.
15. A co-worker helped plaintiff to his feet. Then plaintiff stood in the UPS office doorway for a few minutes. He then went to the supervisor's office and reported the accident to Robert Richardson, the receiving supervisor, and to Jeff Pope, the shipping supervisor. Plaintiff told them he had just lifted a carton and hurt his back.
16. After the May 26, 1992 accident, plaintiff's back pain increased. The pain was in an area slightly lower than the fusion at L3-4 and radiated into his left hip and leg. Plaintiff called Dr. Derian's office the day of or right after his accident and spoke with a nurse who advised him to resume his medication. Despite his pain, plaintiff continued to work, taking his medication to work.
17. Plaintiff's pain continued to worsen until aproximately July 13, 1992 when his pain was so severe that he stayed in bed for four days. On July 27, 1992 plaintiff telephoned Dr. Derian's office, and was advised to report to the emergency room, which he did. Plaintiff has not returned to work for defendant-employer since July 31, 1992.
18. Plaintiff continued under conservative treatment by Dr. Derian. As of November 16, 1992, Dr. Derian opined and advised Ned Turner, President of B. Klitzner Son, that plaintiff could return to employment with the same restrictions as previously imposed including avoiding repetitive bending, stooping, lifting and twisting, and lifting up to 35 pounds on an occasional basis. However, the UPS system operator job plaintiff had been doing did not comply with these restrictions. Defendants did not offer plaintiff any other positions. Futhermore, plaintiff had been terminated in October of 1992.
19. Plaintiff continued under Dr. Derian's care into January of 1993 and was treated with anti-inflammatories and Darvocet. By January 1993, Dr. Derian believed plaintiff's condition had improved, at least with respect to his symptoms. Although Dr. Derian believed plaintiff could return to work with the same restrictions previously imposed, the defendant-employer had not reinstated plaintiff and had not provided plaintiff any suitable work within plaintiff's restrictions.
20. Plaintiff continued to suffer pain and discomfort in his back. On March 29, 1994, he sought treatment from John P. Hammer, a chiropractor. Dr. Hammer began a treatment program for plaintiff which included physical therapy, which involved a hydrocollator pack and muscle stimulator. At first, plaintiff received treatments two times a week, which were reduced to once a week around April 28, 1994, and then to approximately once every two weeks beginning July 14, 1994. As of December 8, 1994, plaintiff continued under the care of Dr. Hammer. Dr. Hammer's care gave plaintiff relief from his pain and other symptoms.
21. Dr. Hammer referred plaintiff to Dr. Guarino, for a neurological consult. Dr. Guarino saw plaintiff on June 16, 1994, at which time Dr. Guarino assessed failed back syndrome. He also noted right sciatica with positive SLR sign bilaterally on examination. Dr. Guarino ordered a CT scan which was performed on June 20, 1994. On June 29, 1994, he reviewed the CT scan which showed mild stenosis at L4-5 and a left lateral disc herniation at L5-S1. However, the 1990 CT scan, prior to the injury, revealed the same condition.
22. Dr. Guarino referred plaintiff to Dr. Nelson Macedo, a neurosurgeon, who saw plaintiff on August 16, 1994. Dr. Macedo examined plaintiff and reviewed the CT scan, which suggested to Dr. Macedo a left-sided differential herniated disc at L5-S1, as well as mild disc bulging at L4-5. His assessment was failed back syndrome, following the surgery. Dr. Macedo was of the opinion that if plaintiff had performed a job that required repetitive bending, lifting, stooping, and twisting and occasional lifting in excess of plaintiff's work restrictions, this could have aggravated his previous back problems.
23. On May 26, 1992 plaintiff suffered a new injury by accident in that he sustained a specific traumatic incident. This accident materially aggravated plaintiff's pre-existing back condition and specifically resulted in injury to and increased pain in plaintiff's lower back.
24. Although plaintiff could have returned to a position within the restrictions enumerated by Dr. Derian, his job as an UPS systems operator was not within those restrictions and defendant did not offer plaintiff suitable employment consistent with the restrictions. Defendants offered no evidence that there were other jobs available compatible with plaintiff's restrictions which plaintiff could have obtained.
25. The conservative medical treatment rendered by Dr. Derian in 1992 and 1993 and the chiropractic care rendered by Dr. Hammer, beginning in 1994, tended to give plaintiff relief from his symptoms and improve his condition. The medical evaluations of Dr. Guraino and Dr. Macedo were also reasonably necessary in assessing plaintiff's condition in 1994.
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On plaintiff's return to work on March 11, 1991, the defendant-employer failed to provide suitable employment that was consistent with plaintiff's restrictions enumerated by Dr. Derian, his treating physician.
2. Plaintiff's injury by accident on May 26, 1992 materially aggravated his pre-existing back condition and resulted in increased pain in plaintiff's lower back, specifically in the area below the level of his fusion at L3-4. As a result of the specific traumatic incident on May 26, 1992, plaintiff has incurred medical expenses for treatment which tended to effect a cure or give relief. Defendants are responsible for payment of all medical expenses incurred by plaintiff as a result of the May 26, 1992 injury by accident to the extent they are reasonably necessary to effect a cure or give relief, including the assessment or treatment rendered by Dr. Derian, Dr. Macedo, Dr Guarino, and Dr. Hammer. N.C.G.S. § 97-25.
3. As a result of the injury sustained in the accident of May 26, 1992, plaintiff was temporarily disabled from his job as a UPS system operator, since the position did not comply with the restrictions imposed by Dr. Derian. Defendants presented no evidence that there were other jobs available in the job market compatible with the plaintiff's restrictions which the plaintiff could have obtained. Radica v. Carolina Mills, 113 N.C. App. 440
(1994)
4. As a result of his injury by accident, plaintiff has been temporarily totally disabled since August 1, 1992 and is entitled to temporary total disability benefits at the rate of $202.68 per week from August 1, 1992 and continuing until plaintiff returns to work or until further order of the Commission.
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay all medical expenses reasonably incurred or to be incurred by plaintiff as a result of his compensable injury by accident on May 26, 1992, as may be reasonably necessary to effect a cure or give relief, including the costs of the medical assessment or treatment rendered by Dr. Derian, Dr. Macedo, Dr. Guarino, and Dr. Hammer, until such time as plaintiff returns to work or until further order of the Commission.
2. Defendants shall pay plaintiff compensation at the rate of $202.68 for the period beginning August 1, 1992 until such time as plaintiff returns to work or until further order of the Commission.
3. A reasonably attorney's fee in the amount of twenty-five percent of the compensation awarded herein is approved for plaintiff's attorney. Twenty-five percent of the compensation accrued and due to plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be forwarded directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. RANDOLPH WARD COMMISSIONER
S/ _______________________ COY VANCE COMMISSIONER
DCS:bjp