The statutory provisions under N.C.G.S. § 97-32.1 are not applicable to this case because liability for temporary total disability was admitted by the employer in a Form 21 Agreement approved on March 31, 1994, a date prior to the October 1, 1994 date when N.C.G.S. § 97-32.1 became effective. The statutory provisions under N.C.G.S. § 97-32.1 for trial return to work are only applicable to claims pending or filed after October 1, 1994, and plaintiff's claim was not pending. Kisiah v. W.R. KisiahPlumbing Co., 124 N.C. App. 72, 476 S.E.2d 434 (1996).
Even though the statutory provisions under N.C.G.S. § 97-32.1
are and were not applicable to this case, the defendants were still under an obligation to reinstate plaintiff's benefits to the plaintiff because of the presumption the plaintiff continued to enjoy under the approved Form 21 Agreement. Plaintiff's return to work as a recreation room attendant did not in and of itself rebut the presumption of continuing disability. The parties did not enter into a settlement agreement approved by the Industrial Commission as to whether plaintiff could return to work and at what wage nor did the plaintiff waive his right to a hearing prior to his benefits being terminated or suspended. ". . . (A)n employee's presumption of disability may not be defeated merely by a return to work." Kisiah, 124 N.C. App. at 76. Defendants were obligated to reinstate and continue to pay plaintiff's full temporary total disability compensation until the Industrial Commission authorized suspension or termination of such benefits after providing both parties a hearing in this matter. The undersigned have taken judicial notice that a Form 24 informal hearing did take place in this matter on February 23, 1995 pursuant to a motion by the defendants to obtain authorization to terminate plaintiff's disability benefits. On February 27, 1995, then Special Deputy Commissioner Bain Jones ordered that a full evidentiary hearing be held in this matter because the Industrial Commission was unable to reach a decision on the Form 24 application.
At the time of the original hearing, the Deputy Commissioner who heard this case could have ordered the defendants to reinstate benefits, make back payments to the plaintiff, pay a ten percent penalty and pay attorney's fees for stubborn, unfounded litigiousness. Hieb v. Howell's Child Care Center, Inc.,123 N.C. App 61, 474 S.E.2d 208 (1996). The existence of an approved Form 21 and the nonexistence of any subsequent order by the Industrial Commission allowing the defendants to discontinue making temporary total disability payments would have served as a sufficient basis to exercise such power.
There are sound public policy reasons for a Deputy Commissioner to take every measure available to make defendants follow the hearing procedures of the Industrial Commission. An admittedly injured worker who has justifiably refused unsuitable employment is vulnerable to greater consequences if he is forced to wait until a final decision is rendered after an evidentiary hearing as compared to an employer and/or an insurance carrier. An injured worker could lose his home, car and other personal belongings while having to wait for a decision after a full evidentiary hearing before the Industrial Commission. An employer and/or insurance carrier is not likely to go out of business as a result of possibly making overpayments on an individual worker's claim while awaiting a hearing. Because the economic impact experienced by the worker is likely to be greater than the economic impact against an employer and/or an insurance carrier, an admittedly injured worker should be able to at least be heard by the Industrial Commission and that worker should only be able to have his or her disability benefits discontinued pursuant to an order of the Industrial Commission. The Form 24 procedure established by the Industrial Commission and statutorily authorized by the legislature is a procedure that attempts to balance the interests of both the injured worker and the employer and/or insurance carrier. This procedure gives an injured worker an opportunity to be heard, and it takes into consideration the employer and insurance carrier's need for an opportunity for the defendants to minimize the costs of overpayments to an injured worker by allowing for an expedited informal hearing.
In order to encourage all employers and insurance carriers to comply with the Form 24 procedure and not risk being subjected to penalties, parties who unilaterally discontinue full benefits should be sanctioned penalties even if the Industrial Commission determines after a full evidentiary hearing that such a discontinuation of benefits was justified. In this case, a full evidentiary hearing has taken place and the undersigned have found that the defendants did offer the plaintiff suitable employment, and that the plaintiff unjustifiably refused this suitable employment. However, there is sufficient evidence in the evidentiary record whereby opposite findings of fact and conclusions of law could have been reached. Plaintiff presented evidence that the authorized treating physician, Dr. Harper, had restricted the plaintiff from returning to work after he stopped performing his duties as a recreation room attendant. Dr. Harper was adamant in his belief that plaintiff's pain complaints were credible. While the undersigned have agreed to uphold the deputy commissioner's findings that the plaintiff's pain complaints were not credible, this decision was reached after a full evidentiary hearing where compelling testimony on both sides was considered. Defendants should not be allowed to risk bypassing the Form 24 procedure in hopes that if they prevail on the merits of the case, they will go unpunished. If such behavior is condoned by the Industrial Commission, then defendants will have no incentive to follow the Form 24 procedure that has been adopted in an effort to balance the interests of the injured worker with the interests of the employers and carriers.
Plaintiff has requested that we order the defendants to make back payments up to the time that a decision had been rendered by the Deputy Commissioner allowing the defendants' request to terminate benefits. Any temporary total disability payments that would be ordered by the Industrial Commission at this time for the time period following the defendants' illegal stopping of benefits would constitute an overpayment. It would not be appropriate to enter an order that such a payment be made at this stage of the hearing process where a full evidentiary hearing has been provided. The defendants failure to follow the Form 24 procedure has resulted in stubborn, unfounded litigiousness. In order to specifically deter these defendants from taking this risk in the future, as well as to generally deter other defendants who may consider bypassing the Form 24 procedure, the undersigned have ordered the defendants to pay attorney fees to the counsel for the plaintiff.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between Defendant-employer and Plaintiff-employee at the time of Plaintiff's injury by accident.
3. Plaintiff sustained an injury by accident on November 8, 1993, while lifting a machine while in Defendant's employment.
4. As shown on the Form 21, approved by the Commission on March 31, 1994, Plaintiff had an average weekly wage of $300.00, yielding a compensation rate of $200.00.
 ***********
Based upon the competent, credible evidence of record, the undersigned makes the following
 FINDINGS OF FACT
1. Plaintiff is a male who was 39 years of age on the date of the hearing. He completed the ninth grade and dropped out of the tenth.
2. Plaintiff sustained an injury by accident on November 8, 1993, when he lifted a carpet cleaning machine and felt pain in his back. He was seen that day at Rex Hospital Emergency Room where he was diagnosed with an acute lumbar strain.
3. Plaintiff came under the care of his family physician, Dr. Wayne Harper, whose specialty is internal medicine. Dr. Harper assessed a lumbar strain and treated Plaintiff conservatively with pain medications to relieve his symptoms. When Plaintiff continued to complain of pain, Dr. Harper suggested an MRI and referred Plaintiff to Dr. Dennis E. Bullard, a neurosurgeon, for evaluation.
4. Dr. Bullard evaluated Plaintiff on January 6, 1994, noting that the MRI of December 16, 1993 showed a minimal disc bulge on the right at L4-L5 and a left lateral disc bulge at L5-L6 with some asymmetry of the forearm at that level. He recommended a work hardening program to get Plaintiff back to work.
5. On February 3, 1994, Plaintiff was examined by Dr. Scott Sanitate of Carolina Rehabilitation Associates. Dr. Sanitate found no significant positive neurologic signs on physical exam, and inconsistencies different from an exam two weeks prior. He also found Plaintiff's pain complaints exaggerated, with a majority of Waddell signs, indications of invalid pain complaints. Dr. Sanitate found no reason to restrict Plaintiff's activities and encouraged him to resume his normal activities.
6. Plaintiff has also been evaluated by Dr. William Lestini with Triangle Spine and Back Care Center, who first saw him on May 5, 1994. A bone scan was completely normal. Dr. Lestini believed Plaintiff had myofascial pain, and was not a surgical candidate. He recommended work hardening and a functional capacity assessment.
7. Plaintiff was then sent to Proactive Therapy for a functional capacity assessment and work hardening. During the functional capacity assessment done on May 27, 1994, Plaintiff demonstrated self-limiting behavior and positive Waddell signs. The functional capacity assessment showed Plaintiff was capable of performing work in the medium lifting category of the Department of Labor's Dictionary of Occupational Titles, despite his behavior. During his work hardening program, although he attended, Plaintiff was less than cooperative and continued to exhibit self-limiting behavior.
8. After completing the work hardening program, Plaintiff returned to work for Defendant as a recreation room attendant around the first of September, 1994. His duties included mopping the floor, keeping the bathrooms clean and orderly, vacuuming using an upright vacuum, cleaning windows, and cleaning the pool. This job was within Plaintiff's physical capabilities, and was approved by Dr. Harper as well as Dr. Lestini.
9. On his return to work in September, 1994, in a lighter duty position, both Connie Smith, property manager where Plaintiff worked, and Charles Coleman, grounds supervisor, saw Plaintiff sleeping in a lounge chair when he was supposed to be working.
10. Plaintiff was examined again by Dr. Lestini on December 16, 1994. Dr. Lestini reiterated his assessment that Plaintiff had myofascial pain. He found Plaintiff was at maximum medical improvement and found no reason Plaintiff could not return to full duties as a recreation room attendant.
11. Following his release by Dr. Lestini, Plaintiff returned to his work as a recreation room attendant. He continued to work through January 5, 1995, although he was absent from work 5 days between December 19, 1994 and January 5, 1995. During this time period, plaintiff arrived to work late without any explanation, left work during lunch and did not return for the remainder of the day, and arrived to work ungroomed. He left work on January 6, 1995 and contacted Dr. Harper.
12. On January 6, 1995, Plaintiff complained to Dr. Harper of persistent pain. Without examining Plaintiff, based only upon Plaintiff's subjective complaints of pain, Dr. Harper wrote Plaintiff a note to be out of work for 3 months, and Plaintiff did not return to work.
13. On January 23, 1995, Defendant sent Plaintiff a letter notifying him that he was terminated due to excessive absenteeism and refusal to perform his duties even though he had been released by Dr. Lestini.
14. Since being terminated by the Defendant-Employer in January, 1995, Plaintiff has not made any attempt to find employment.
15. The physicians and therapists who have evaluated Plaintiff, other than Dr. Harper, have noted Plaintiff's exaggerated pain complaints, inconsistent pain behavior, and positive Waddell signs. The Waddell signs are tests used to determine the validity of a patient's pain complaints. The positive signs indicate invalid pain complaints. Dr. Harper was not familiar with the Waddell signs and did not appreciate their significance.
16. Based upon the greater weight of the evidence and Plaintiff's behavior and demeanor at the hearing as observed by Deputy Commissioner Cramer, the undersigned upholds the finding by Deputy Commissioner Cramer that Plaintiff's pain complaints were not credible. In particular, at the hearing, Deputy Commissioner Cramer observed that Plaintiff did not appear to be in any pain or distress.
17. By his excessive absences and refusal to carry out his duties, after being released to return to full duties as the recreation room attendant, by Dr. Lestini on December 16, 1994, Plaintiff effectively refused suitable employment which was within his capabilities.
18. The evidence fails to establish that Plaintiff was incapable of earning his pre-injury wages in the same or any other employment for the time period between January 6, 1995 and October 31, 1995.
19. Plaintiff was seen again by Dr. Lestini on July 18, 1995, at which time Dr. Lestini found no change in Plaintiff's condition. He assigned Plaintiff a permanent impairment rating of two percent to his back.
20. As of September, 1994, Plaintiff was able to return to work with the Defendant-Employer, as a recreation room attendant. By December, 1994, Plaintiff had reached maximum medical improvement and was able to carry out the full duties of a recreation room attendant. His refusal to do so after that date was not justified.
21. Between February 9, 1995 and October 31, 1995, plaintiff received medical treatment for his back injury from Dr. Mallon. While Dr. Mallon rendered an opinion that plaintiff had a significantly greater permanent partial disability to his back as compared to the opinion rendered by Dr. Lestini, Plaintiff's back condition, itself, remained basically the same as it had been at the time that he was released by Dr. Lestini. Plaintiff's physical ability to earn wages remained the same between the time period that Dr. Lestini released plaintiff to return to work on December 16, 1994 and October 31, 1995. Because both physicians were in agreement with regard to the nature of plaintiff's back injury as well as the course of medical treatment that should be followed, the undersigned has determined that an average of the two disability ratings would be appropriate in this matter. As a result of plaintiff's November 8, 1993 compensable injury by accident, plaintiff has sustained an eleven percent permanent partial disability to his back.
22. On January 17, 1995, Defendants filed a Form 24 application to stop payment to plaintiff. At the time that this application was made, the Defendants had not reinstated Plaintiff's full temporary total disability compensation benefits. The undersigned takes judicial notice that on February 23, 1995, a Form 24 informal hearing did take place, and an order was filed by Special Deputy Commissioner Bain Jones on February 27, 1995 reporting that the Industrial Commission was unable to render a decision on the application in an informal hearing. Following this order, the defendants did not reinstate plaintiff's full benefits. Defendants did continue to make partial payments to the Plaintiff after the Plaintiff was terminated by the Defendant-Employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has the initial burden of proving that he is unable to earn the same wages he had earned prior to his injury in the same or any other employment. In this case, the Form 21 previously approved established a prior period of temporary total disability. N.C.G.S. § 97-29; Kisiah v. W. R. Kisiah Plumbing Co.,124 N.C. App. 72, 476 S.E.2d 434 (1996).
2. Defendants have successfully rebutted any presumption of total disability by proving that, as of December 16, 1994, when Plaintiff was released by Dr. Lestini to return to the position of recreation room attendant, Plaintiff was, indeed, capable of working and earning wages in that position. Evidence from Plaintiff to the contrary is not credible and evidence to the contrary from Dr. Harper is not persuasive since it was based solely upon Plaintiff's subjective and incredible complaints of pain. Radica v. Carolina Mills, 113 N.C. App. 440,439 S.E.2d 185 (1994).
3. Plaintiff has failed to meet his burden of showing total disability for the time period between January 6, 1995 and October 31, 1995. Plaintiff has failed to prove that he is physically or mentally, due to his injury, incapable of working in any employment, or that he has made reasonable efforts to secure employment, but has been unsuccessful, or that it would be futile for him to look for work due to pre-existing conditions, or that he has obtained other employment at a lesser wage than that earned prior to his injury by accident. N.C.G.S. § 97-29; Russell v.Lowes, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. After being released to return to full duty by Dr. Lestini on December 16, 1994, Plaintiff's failure to consistently report to work and carry out his duties amounted to an unjustified refusal to accept suitable employment. N.C.G.S. § 97-32.
5. As a result of his injury by accident of November 8, 1993, Plaintiff has sustained an eleven percent permanent impairment to his back, for which he is entitled to thirty-three weeks of compensation at the rate of $200.00 per week. N.C.G.S. § 97-31 (23).
6. Plaintiff's return to work with the Defendant-employer as a recreation room attendant did not in and of itself rebut the presumption of continuing disability. Plaintiff did not waive his right to a hearing to determine whether the job as a recreation room attendant was an offer of suitable employment. The parties did not enter into a settlement agreement approved by the Industrial Commission as to whether plaintiff could return to work and at what wage. An employee's presumption of disability may not be defeated merely by a return to work. Defendants were obligated to reinstate and continue to pay plaintiff's temporary total disability compensation until the Industrial Commission authorized suspension or termination of such benefits after providing both parties a hearing on this matter. "`Thus, absent a settlement with the employee, an award of temporary total disability cannot be undone without resort to a lawful determination by the Commission that the employee's disability no longer exists which will require the application of law to fact and, therefore, a hearing.'" Saums v. Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997). The Defendants' decision to unilaterally discontinue plaintiff's ongoing temporary total disability compensation has resulted in stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay Plaintiff compensation at the rate of $200.00 per week for thirty-three weeks for his eleven percent permanent impairment of his back. This amount has accrued and shall be paid in a lump sum directly to the Plaintiff. Defendants may receive an offset against this amount for the partial payments they made during the time period following January 6, 1995 and up to the date they stopped making any payments following the Deputy Commissioner's decision in this matter.
2. A reasonable attorney's fee in the amount in the amount of $2,000.00 shall be paid by the Defendants directly to plaintiff's counsel as a penalty for the Defendants' decision to discontinue plaintiff's temporary total disability compensation benefits without authorization from the Industrial Commission.
3. Plaintiff's claim for any additional disability compensation benefits under the Workers' Compensation Act is DENIED.
4. Defendants shall pay the costs.
 S/ ________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
deb/sm