Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in a pretrial order as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Aetna Casualty and Surety Company is the carrier on risk.
4. Plaintiff suffered an injury by accident to his left knee that arose out of and in the course of his employment with defendant-employer on 9 April 1992.
5. A Form 22 was submitted from which an average weekly wage would be determined.
6. Plaintiff's medical records were stipulated into evidence. These records consist of the following: eighteen pages of documentation from Johnston Memorial Hospital; twenty pages of documentation from Dr. S. Robert Bylciw; two pages of documentation from Joyce Robbins, R.N.; and eight pages of documentation from Dr. Andrew P. Bush.
7. An Industrial Commission Form 18 dated 19 November 1992 was stipulated into evidence.
8. An Industrial Commission Form 19 dated 10 April 1992 was stipulated into evidence.
9. An Industrial Commission Form 21, approved on 12 May 1992, was stipulated into evidence.
10. An Industrial Commission Form 26, approved on 15 April 1993, was stipulated into evidence.
11. Plaintiff's payroll information from F.T. Williams Company, Inc., from 18 March 1995 to 17 June 1995, was stipulated into evidence.
12. Plaintiff's earning statements from Oliver's Family Restaurant, dated 14 September 1995 and 28 September 1995, were stipulated into evidence.
13. Plaintiff's payroll stubs from F.T. Williams Company, Inc., from 4 September 1993 to 13 November 1993, were stipulated into evidence.
14. Plaintiff's payroll stubs from defendant-employer, from 3 October 1991 until 19 March 1992, were stipulated into evidence.
 ***********
The Full Commission adopts, with modifications, the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. From late September 1991 until 9 April 1992, plaintiff worked as an assistant brick mason and laborer for defendant-employer. Plaintiff earned $5.50 per hour, with an average weekly wage of $243.60. Plaintiff's job required him to be on his feet approximately eight hours a day, and to use his hands to push, pull or lift loads of bricks and other construction materials. He worked on various types of terrain.
2. On 9 April 1992, plaintiff suffered an on-the-job injury by accident to his left knee while pushing a wheelbarrow full of bricks which inadvertently turned over on his left leg and left side of his body.
3. Plaintiff tore the medial meniscus and the interior cruciate ligament of his left knee.
4. On 5 May 1992, the parties executed a Form 21 for compensation for disability in the amount of $155.84 per week, continuing for necessary weeks. On 12 May 1992, the Form 21 was approved by the Commission.
5. Dr. S. Robert Bylciw treated plaintiff's left knee. On 15 May 1992, Dr. Bylciw performed arthroscopic surgery on plaintiff's left knee to repair the torn meniscus. Plaintiff's torn anterior cruciate ligament was treated conservatively with a post-operative rehabilitation program, including physical therapy and exercise.
6. Following plaintiff's surgery, he returned to work with defendant-employer on 9 June 1992.
7. Plaintiff continued to follow up with Dr. Bylciw after his return to work. Dr. Bylciw found that in the summer and fall of 1992 plaintiff continued to improve. However, plaintiff experienced some buckling and giving way of the knee while working, accompanied by periodic swelling of the knee joint. Dr. Bylciw recommended intermittent time off from work and continued physical therapy.
8. On 30 October 1992, the parties executed a Form 26 for payment of temporary partial disability benefits commencing 23 October 1992. On 15 April 1993, the Commission approved the Form 26.
9. Plaintiff's physical disability resulting from his knee injury and subsequent treatment caused him to miss work intermittently between 9 June 1992 and 16 April 1993.
10. On 16 April 1993, Stacy Penny came to take plaintiff to work. Plaintiff indicated that he would not be able to work that day because he had to pick up a relative at the airport. Mr. Penny stated that plaintiff had missed a great deal of work and he had to have someone who would work. When plaintiff indicated that he would not be able to go to work that day, Mr. Penny terminated his employment.
11. Plaintiff's employment was terminated as a direct result of time missed from work over a period of several months due to his continuing disability caused by his compensable injury, and not for misconduct or other just cause.
12. Following his termination with defendant-employer, plaintiff worked full time at a number of short-term jobs, consisting of the following: (1) laborer at a tobacco warehouse at $6.00 per hour, for less than one day; (2) pipe layer at $6.00 per hour, from the end of April 1993 to 21 June 1993; and (3) painter at $6.00 per hour, from 1 June 1993 to 21 June 1993. Plaintiff left his painting and pipe laying jobs because of continuing pain in his knee due to the compensable injury. He left the tobacco warehouse job for reasons unrelated to his compensable injury.
13. On 1 September 1993, plaintiff began working as a laborer for F.T. Williams, a construction company, at an hourly wage of $6.50. His duties consisted of assisting mechanics, sweeping, washing cars, and moving barrels and materials. Plaintiff worked for F.T. Williams until 23 November 1993, when he left because of continuing problems with his knee due to his compensable injury.
14. By December 1993, Dr. Bylciw determined that the conservative treatment of plaintiff's torn anterior cruciate ligament was unsuccessful. On 17 December 1993, he performed a repeat arthroscopy of plaintiff's left knee using a bone/patella/tendon graft.
15. Following surgery, plaintiff began a program of extensive physical therapy to increase the strength and range of motion in his left knee. On 11 July 1994, while plaintiff was engaged in physical therapy at the direction of Dr. Bylciw, he re-injured his knee by again tearing his medial meniscus.
16. On 8 December 1994, another arthroscopic operation was performed on the left knee to excise the torn medial meniscus.
17. On 22 February 1995, Dr. Bylciw determined that plaintiff had reached maximum medical improvement. Dr. Bylciw restricted plaintiff's work, indicating that plaintiff should not perform any work requiring repetitive motion of his left knee. Dr. Blyciw required that plaintiff work on a flat surface, avoid frequent climbing, and avoid roofing or other elevated work.
18. On 17 March 1995, plaintiff returned to work for F. T. Williams at the same wage he earned prior to his 8 December 1994 surgery. On 17 June 1995, plaintiff left that job, due to continued pain in his knee.
19. On 28 August 1995, plaintiff began working as a dishwasher for Oliver's Family Restaurant at an hourly wage of $5.00, and an average weekly wage of $113.15. On 24 September 1995, plaintiff left that job, again due to difficulties with his knee.
20. On 21 November 1995, Dr. Bylciw assigned an eighteen (18) percent permanent partial disability rating to plaintiff's left knee.
21. On 6 March 1996, plaintiff presented to Dr. Andrew P. Bush with complaints of continuing pain in his left knee. Dr. Bush recommended physical therapy. This physical therapy was reasonably necessary to effect a cure, give relief, or lessen plaintiff's disability.
22. On 19 November 1996, following a program of continuing strengthening exercises, plaintiff's physical therapist noted that plaintiff was capable of complete stabilization of his left knee, and was able to achieve multiple squat positions of near full depth, ascend and descend stairs without difficulty, and repeat groups in multidirectional step-up activities.
23. On 4 March 1997, upon reexamination of plaintiff, Dr. Bush opined that plaintiff had reached maximum medical improvement and assigned a permanent partial disability rating of twenty-five (25) percent to his left knee. Dr. Bush stated that plaintiff retained some clinical instability of the knee, which would hamper his ability to return to construction work.
24. Dr. Bylciw did not examine plaintiff again following the conclusion of his physical therapy, but was presented with the 19 November 1996 final report. After reviewing the report, Dr. Bylciw declined to change plaintiff's permanent partial disability rating of eighteen (18) percent. Dr. Blyciw continued to recommend that plaintiff work on flat surfaces, and avoid heights, frequent squatting, and the use of ladders.
25. Plaintiff reached maximum medical improvement on 4 March 1997.
26. Plaintiff's average weekly wage is $243.60, yielding a compensation rate of $162.41.
27. Plaintiff has suffered a permanent partial disability impairment to his left knee of twenty-two (22) percent.
28. Defendant-carrier paid plaintiff seventy-nine (79) weeks and one day of temporary total disability compensation at a rate of $154.84 from 9 April 1992 to 9 June 1992, and from 17 December 1993 to 27 March 1995.
29. The medical evidence tends to show that upon plaintiff's reaching maximum medical improvement, it may have been difficult for him to perform certain types of construction jobs. The evidence also tends to show that jobs of the type held by plaintiff at Oliver's Restaurant are within plaintiff's physical and vocational capabilities.
30. Although plaintiff obtained a job at Oliver's which would appear to be within his current physical and vocational capabilities, he left that job more than a year before he received additional physical therapy and reached maximum medical improvement. Plaintiff's success in obtaining the Oliver's job is not sufficient to rebut the presumption of continuing disability. Defendants have not offered any evidence as to the current availability of suitable employment within plaintiff's physical and vocational limitations, or of plaintiff's capability of obtaining such employment.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability compensation benefits at a rate of $162.41 for the period commencing 16 April 1993 through 29 April 1993, and the period commencing 22 June 1993 through 31 August 1993, during which he was unemployed due to the disability resulting from his compensable injury. In addition, plaintiff is entitled to temporary total disability benefits for the period commencing 24 November 1993 through 16 March 1995, and the period commencing 17 June 1995 through 27 August 1995. Defendant is entitled to a credit for any compensation already paid during these periods in compliance with the Act. N.C. Gen. Stat. § 97-29.
2. For the period between 30 April 1993 and 21 June 1993 during which time plaintiff was employed at various jobs, the greater weight of the evidence shows that he was earning the same or greater wages than those earned while employed by defendant-employer. Therefore, plaintiff is not entitled to temporary partial disability payments for that period. N.C. Gen. Stat. § 97-30.
3. From 28 August 1995 to 24 September 1995, plaintiff earned $130.45 per week less than his average weekly earnings with defendant-employer. Plaintiff is entitled to temporary partial compensation at a rate of $86.97 for those weeks. N.C. Gen. Stat. § 97-30.
4. Upon the approval of the Form 21, a presumption of total disability arises in favor of the employee. Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996). At that point, the burden shifts to the employer to demonstrate that the worker is employable. Radica v.Carolina Mills, 113 N.C. App. 440, 439 S.E.2d 185 (1994). The employer may rebut the continuing presumption of total disability by showing the employee's capacity to earn the same or lesser wages than before the injury occurred. Franklin, at 209, 472 S.E.2d at 388. This may be accomplished by a showing that: (1) suitable jobs are available for the employee; (2) that the employee is capable of getting one of these jobs, taking into account the employee's physical and vocational limitations; and, (3) that the job would enable the employee to earn some wages.Id.
Plaintiff left his job at Oliver's due to continuing disability causally related to his compensable injury, more than a year prior to the hearing of this matter before the Deputy Commissioner. That being the only evidence before the Full Commission regarding plaintiff's ability to obtain work at the same or lesser wages than before the injury, the Full Commission holds that defendants have failed to rebut the presumption of continuing disability by showing that suitable jobs are available to plaintiff and that he is capable of obtaining employment. Accordingly, the presumption of disability remains in force, and plaintiff is entitled to temporary total disability payments beginning 25 September 1995, and continuing until the presumption of disability is successfully rebutted. N.C. Gen. Stat. §97-29.
5. Plaintiff is entitled to reimbursement for all medical treatment relating to this compensable injury which would effectuate a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
6. Defendants failed to meet their burden of proof to show that plaintiff was terminated from his employment with defendant-employer for misconduct or fault on plaintiff's part. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the weekly amount of $162.41 for the period commencing 16 April 1993 through 29 April 1993, and the period commencing 22 June 1993 through 31 August 1993. Defendants shall also pay plaintiff temporary total disability compensation in the weekly amount of $162.41 for the period commencing 24 November 1993 through 16 March 1995, and the period commencing 17 June 1995 through 27 August 1995. Defendants are entitled to a reduction in the foregoing payments equal to any payments already made to plaintiff in satisfaction of the requirements of the Act. Payment shall be made in a lump sum, subject to the attorney's fee approved in Paragraph 5.
2. Defendants shall pay plaintiff temporary partial compensation at a rate of $86.97 from 28 August 1995 to 24 September 1995. Defendants are entitled to a reduction in the foregoing payments equal to any payments already made to plaintiff in satisfaction of the requirements of the Act. Payment shall be made in a lump sum, subject to the attorney's fee approved in Paragraph 5.
3. Defendants shall pay plaintiff temporary total disability compensation in the weekly amount of $162.41 from 25 September 1995 and continuing until further orders of the Commission. Defendants are entitled to a reduction in the foregoing payments equal to any payments already made to plaintiff in satisfaction of the requirements of the Act. Any accrued amount shall be paid in a lump sum. Payments shall be subject to the attorney's fee approved in Paragraph 5.
4. Defendants shall pay for all medical treatment provided to plaintiff which provides relief, effectuates a cure, or lessens the period of disability.
5. A reasonable attorney's fee of twenty-five (25) percent of the compensation due plaintiff under Paragraphs 1, 2, and 3 of this Award is approved for plaintiff's counsel. Payment shall be deducted from each of plaintiff's lump sum awards and paid directly to plaintiff's counsel. As to weekly payments which are continuing, every fourth payment shall be paid directly to plaintiff's counsel.
6. Defendants shall pay all costs.
 S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
RCR:mdg