LOUZALIA RADICA, Employee, Plaintiff v. CAROLINA MILLS, Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. 9210IC1239

(Filed 1 February 1994)

1. **Master and Servant § 69.1 (NCI3d) — workers' compensation — back injury — release to return to work — additional disability benefits**

Defendants in a workers' compensation action arising from a back injury failed to overcome the presumption that plaintiff's temporary total disability continued until she returned to work at the same wage earned prior to the injury where there was no evidence to support a finding that plaintiff retained any earning capacity as of the date on which she was released to return to work by defendant-employer's physician and on which her temporary total disability benefits were terminated. An employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the presumption of disability.

**Am Jur 2d, Workers' Compensation § 382.**

2. **Master and Servant § 96.6 (NCI3d) — workers' compensation — continuing disability — denial of award — conclusion that connection between injury and inability to work not shown — error**

The Industrial Commission erred in a workers' compensation case by denying benefits for continuing disability based on plaintiff's failure to show that her work-related injury caused her inability to work where the parties executed I.C. Forms 21 and 26, which were approved by the Commission; the sole issue before the Deputy Commissioner was whether plaintiff was entitled to further benefits; defendant conceded in its appellate brief that there was no dispute that plaintiff was injured at work while pulling a bobbin from a spindle; the record is devoid of evidence that plaintiff's injury was caused by any event other than pulling a bobbin from a spindle; and defendant failed to produce expert testimony that the alleged precipitating event could not have caused the injury.

**Am Jur 2d, Workers' Compensation § 263.**

RADICA v. CAROLINA MILLS

[113 N.C. App. 440 (1994)]

3. **Master and Servant § 75 (NCI3d) — back injury — compensation for treatment — remanded**

A workers' compensation action was remanded for a determination of plaintiff's entitlement to medical expenses pursuant to N.C.G.S. § 97-25 for treatment by her own four doctors where defendant contended that it had authorized only its own physician, that plaintiff had been told that she would not be paid for treatments by her doctors, and that the treatments provided by plaintiff's doctors did not relate to her injury.

**Am Jur 2d, Workers' Compensation § 436.**

Appeal by plaintiff from opinion and award of the North Carolina Industrial Commission filed 14 September 1992. Heard in the Court of Appeals 26 October 1993.

The parties in this action do not dispute that plaintiff was injured at work while pulling a spinning bobbin from a spindle on 18 April 1988. On or about 3 May 1988, defendant-employer filed an "Employer's Report of Injury to Employee" (I.C. Form 19), listing plaintiff's "lower back pain" as the nature and location of injury and Dr. Dickerson as the treating physician. On 13 May 1988, the parties entered an "Agreement for Compensation for Disability" (I.C. Form 21) for plaintiff's "lower back pain" with payments beginning 8 May 1988 and continuing for the necessary number of weeks. This form was approved by the Industrial Commission on 26 May 1988. Plaintiff returned to work briefly on 29 August 1988, but could not perform her duties because of her continuing back pain. Consequently, on 6 September 1988, the parties entered a "Supplemental Memorandum of Agreement as to Payment of Compensation" (I.C. Form 26) stating that plaintiff became totally disabled on 30 August 1988 and that payments were to begin on that date and continue for the necessary number of weeks. This form was approved by the Industrial Commission on 7 October 1988.

On 21 September 1988, plaintiff was released to return to work with no disability. Plaintiff alleges that she was unable to return to work on 21 September 1988 because of her continuing pain. On 1 November 1988, plaintiff filed a "Request that Claim Be Assigned For Hearing" (I.C. Form 33), claiming that she was "still injured and unable to work" and seeking compensation for

work days missed after 20 September 1990 and the payment of medical expenses and treatment.

On 18 April 1991, a Deputy Commissioner of the North Carolina Industrial Commission rendered the following opinion and award:

FINDINGS OF FACT

1. Plaintiff, who is 47 years old, attended school to the ninth grade. She has worked in textiles in a variety of capacities since age 17, and has always worked, except one year when her son was sick.

2. Plaintiff's injury occurred on 18 April 1988 when, while pulling a spinning bobbin from a spindle she experienced a pain in her left lower back which radiated posteriorly into the left calf and plantar left foot with numbness of the foot. She was seen by her family doctor on 20 and 24 April 1988, after which defendants directed her to seek treatment with Dr. Dickerson at the Gaul Orthopedic Group.

3. Plaintiff followed up with Dr. Dickerson from 29 April 1988 to 20 September 1988. Ct-Scan was negative and Dr. Dickerson assured plaintiff that surgery would not be required. Dr. Dickerson noted symptom magnification. Plaintiff underwent physical therapy, but her pain continued, prompting Dr. Dickerson to order at least two pain studies, the results of which revealed minimal physicogenic [sic] pain. On the advice of Dr. Dickerson, plaintiff attempted to return to work on 29 August 1988, but had to leave during the middle of her shift. Dr. Dickerson was never able to identify anything that was specifically wrong with plaintiff that was severe enough to cause the kind of pain of which she complained, and released her to return to work on 21 September 1988 with not [sic] disability.

4. Ronnie Thompson, defendant-employer mill nurse, told plaintiff she was not to see Dr. Shah or Dr. Phillips.

5. Plaintiff returned to Dr. Shah on 22 September 1988 after she was released by Dr. Dickerson, because she was still having increasing discomfort in her low back and left leg. Dr. Shah referred plaintiff to Dr. Phillips, an orthopedist, and Dr. Kelly, a neurosurgeon at Bowman-Gray.

6. An MRI scan of the lumbar spine was done and the results were normal. Plaintiff saw Dr. Phillips until 5 October 1988, at which time he did not feel she was able to work. Dr. Phillips was unable to identify a physical cause for plaintiff's pain and thought perhaps she needed to go to a pain clinic. He had nothing to offer her.

7. Dr. Shah's records do not reflect that he is able to offer an explanation for plaintiff's continued complaints of pain. He referred her to Dr. Phillips, who was unable to identify the source of plaintiff's pain, found all the studies to be normal, and had nothing to offer her. Except for the fact that plaintiff's symptoms developed and continued after the injury of 18 April 1988, Dr. Shah never causally relates plaintiff's unexplained continued complaints of pain to the injury of 18 April 1988.

8. Plaintiff saw Dr. Kelly on 11 November 1988. Dr. Kelly recommended a myelogram and CT-Scan, but defendants refused to pay for this treatment.

9. Plaintiff did not return to Dr. Kelly until 6 July 1990, at which time plaintiff complained of continuing pain on the left side down the left leg to the foot. On exam she had positive straight leg raising on the left. Dr. Kelly proceeded with a myelogram and post-myelogram CT-Scan, the results of which were again normal.

10. On 26 July 1990 plaintiff exhibited limited straight leg raising, but no weakness or reflex changes. Voltare and Soma were prescribed and plaintiff was to return to Dr. Kelly in two months.

11. On 27 September 1990, plaintiff returned to Dr. Kelly and reported that she was doing better. Dr. Kelly concluded that she had reached maximum medical improvement on 27 September 1990, that she retained a ten percent permanent impairment to her back, and that she could return to full time work that did not require lifting over 30 to 40 pounds.

12. Defendants advised plaintiff through her attorney in May 1990 that they would have no objection to plaintiff returning to Dr. Dickerson for follow up treatment, but they would not authorize Dr. Kelly.

13. Plaintiff is of the opinion that there is no job which she is able to perform which pays more than minimum wage. She complains that her back pain prevents her from sitting, standing or walking for long periods of time. There is no evidence that her continued complaints of pain are causally related to the injury of 18 April 1988.

14. There is no evidence that the treatment plaintiff received from Dr. Shah in September 1988 and the treatment she received from Dr. Phillips in 1988, gave relief, tended to effect a cure, lessened the period of plaintiff's disability, or was causally related to the injury of 18 April 1988.

15. The treatment plaintiff received from Dr. Kelly, a neurosurgeon, did tend to give relief. However, there is no evidence that the condition which Dr. Kelly treated in plaintiff was causally related to the injury of 18 April 1988.

16. As a result of the injury of 18 April 1988, plaintiff was unable to earn the same wages she was earning at the time of the injury in the same or any other employment, from the date of injury to 21 September 1988.

17. There is insufficient evidence to support a finding that plaintiff's injury of 18 April 1988 is causally related to any permanent impairment to her back or to the complaints of pain which have prevented plaintiff from returning to work. Plaintiff. has failed to establish that she suffered a total or partial loss of wage earning capacity after 21 September 1988 as a result of the injury of 18 April 1988.

The foregoing findings of fact engender the following

## CONCLUSIONS OF LAW

1. As a result of the injury of 18 April 1988, plaintiff was temporarily and totally disabled from the date of injury to 21 September 1988. G.S. 97-29.

2. Plaintiff has the burden of establishing by expert medical testimony the causal connection between her injury of 18 April 1988 and the treatment she received and any periods of disability she may have suffered after 21 September 1988. *Click v. Pilot Freight Carriers*, 300 N.C. 164[, 265 S.E.2d 389] (1980). Inasmuch as the stipulated medical records fail to show that

the problems for which plaintiff sought treatment from Dr. Shah, Dr. Phillips, and Dr. Kelly, and her inability to return to work after 21 September 1988, were causally related to the injury of 18 April 1988, her claim for additional workers' compensation benefits is DENIED.

\*\*\*\*\*\*

The foregoing findings of fact and conclusions of law engender the following

## AWARD

1. Plaintiff's claim for additional workers' compensation benefits is hereby denied.

2. Defendants shall not be responsible for paying for the medical treatment plaintiff received from Dr. Shah, Dr. Phillips, and Dr. Kelly.

3. Each side shall pay its own costs.

On 14 September 1992, the Full Commission found "no adequate ground to amend the award" and "adopt[ed] as its own the Opinion and Award as filed." Plaintiff appeals.

*Malcolm B. McSpadden for plaintiff-appellant.*

*Alala Mullen Holland & Cooper, P.A., by H. Randolph Sumner, for defendant-appellees.*

EAGLES, Judge.

I.

[1] Plaintiff argues that the Industrial Commission "erred by failing to apply the presumption that the plaintiff's temporary total disability continues until she returns to work at the same wage earned prior to the injury." We agree.

In *Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 41, 415 S.E.2d 105, 106, *disc. review denied*, 332 N.C. 347, 421 S.E.2d 154 (1992), this Court stated:

Appellate review of an order and award of the Industrial Commission is limited to a determination of whether the findings of the Commission are supported by the evidence and whether the findings in turn support the legal conclusions of

the Commission. *Cody v. Snider Lumber Co.*, 328 N.C. 67, 399 S.E.2d 104 (1991) (citations omitted). This is so even though there is evidence which would support a finding to the contrary. *Crawford v. Warehouse Co.*, 263 N.C. 826, 140 S.E.2d 548 (1965). However, if the findings are predicated on an erroneous view of the law or a misapplication of the law, they are not conclusive on appeal. *See e.g., Bailey v. Dept. of Mental Health*, 272 N.C. 680, 159 S.E.2d 28 (1968) (remand required to consider evidence in its true legal light). Furthermore, findings of fact which are essentially conclusions of law will be treated as such upon review. *Cody*, 328 N.C. 67, 399 S.E.2d 104.

Furthermore, it is well established that the Workers' Compensation Act " 'should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation.' " *Hall v. Chevrolet Co.*, 263 N.C. 569, 576, 139 S.E.2d 857, 862 (1965) (citations omitted).

Here, plaintiff seeks additional disability benefits for the period after which she was released by defendant-employer's physician to return to work. Regarding an employee's claim to disability benefits, this Court has stated:

The [Workers' Compensation] Act compensates a worker for work related injuries which prevent him from earning the equivalent amount of wages he was making before his injury. *See Little v. Food Service*, 295 N.C. 527, 246 S.E.2d 743 (1978). Our courts have ruled that in order to receive compensation for disability, the mere fact of an injury is not sufficient but rather the injury must have caused some impairment in the worker's earning capacity. *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E.2d 755 (1967).

G.S. § 97-2(9) defines disability as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Accordingly, in *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982), our Supreme Court ruled that in order to find a worker disabled under the Act the Commission must find:

(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

(2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and

(3) that this individual's incapacity to earn was caused by plaintiff's injury.

Initially, the claimant must prove the extent and degree of his disability. *Armstrong* [71 N.C. App.] at 784, 323 S.E.2d at 49. On the other hand, once the disability is proven, there is a presumption that it continues until "the employee returns to work at wages equal to those he was receiving at the time his injury occurred." *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971).

*Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 475-76, 374 S.E.2d 483, 485 (1988). In this record, there is no evidence to support a finding that plaintiff retained any earning capacity as of 21 September 1988, the date on which she was released to return to work by Dr. Dickerson and on which her temporary total disability benefits were terminated. Here, plaintiff has carried her initial burden, *id.*, of showing that she was disabled. The record discloses that defendant admitted liability under the Workers' Compensation Act through approved settlements (I.C. Form 21 and I.C. Form 26). Plaintiff began to receive temporary total disability payments on 8 May 1988 and the parties have stipulated that these payments continued until her release to return to work was authorized by defendant-employer's physician on 21 September 1988. An employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the benefit of the *Watkins v. Motor Lines* presumption. *Cf. Watson*, 92 N.C. App. at 476, 374 S.E.2d at 485 (finding of maximum medical improvement is not the same as a finding that the employee is able to earn the same wage earned prior to the injury). After plaintiff meets her initial burden, the burden shifts to defendants who must show that plaintiff is employable. *Id.; Lackey v. R.L. Stowe Mills*, 106 N.C. App. 658, 662, 418 S.E.2d 517, 519-20, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 150 (1992). The Deputy Commissioner's findings and conclusions are devoid of any indication that defendant met its burden of showing that on 21 September 1988 plaintiff was capable of earning the same wage that she had earned prior to the injury. Accordingly, we conclude that defend-

ants have failed to overcome the *Watkins v. Motor Lines* presumption.

## II.

[2] Plaintiff contends that the Industrial Commission erred "by denying workers' compensation benefits for continuing disability to the plaintiff on the basis that she had failed to show that her work-related injury to her back caused her inability to work after September 21, 1988." We agree.

We note that the parties here have executed I.C. Forms 21 and 26, which were subsequently approved by the Industrial Commission. Furthermore, the sole issue before the Deputy Commissioner in this proceeding was a determination of whether plaintiff was entitled to further benefits. In *Lucas v. Thomas Built Buses*, 88 N.C. App. 587, 591, 364 S.E.2d 147, 150 (1988), this Court stated:

> The record contains two agreements, IC Forms 21 and 26, in which defendants agree to pay compensation for plaintiff's back injury. The record also reveals that the only issue before the Commission was whether plaintiff's compensation should continue, not whether his alleged disability was the result of [the employee's] accident. G.S. 97-17 provides that, "no party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of matters [therein] set forth, unless it shall be made to appear . . . that there ha[s] been error due to fraud, misrepresentation, undue influence or [mutual] mistake." This is a case of admitted liability and the Commission's conclusion that there was no evidence to show causation is not a basis for denying plaintiff's award.

Accordingly, we conclude that the Deputy Commissioner erred in concluding that "[p]laintiff has the burden of establishing by expert medical testimony the causal connection between her injury of 18 April 1988 and . . . any periods of disability she may have suffered after 21 September 1988. *Click v. Pilot Freight Carriers*, 300 N.C. 164[, 265 S.E.2d 389] (1980)." We note that in *Click* the employer did not admit liability as the employee there provided conflicting accounts as to the origin of his injury. *Id.* Furthermore, upon a careful examination of *Click* we find that the precise holding of that case would be inapplicable to the facts presented here even in the absence of defendant-employer's admission of liability.

RADICA v. CAROLINA MILLS

[113 N.C. App. 440 (1994)]

In *Click*, our Supreme Court expressly set forth the specific admonition concerning the requirement of a plaintiff's presentation of expert opinion evidence regarding causation:

> We do not rule out the possibility that a disc injury case may arise in the future wherein the facts are so simple, uncontradictory, and obvious as to permit a finding of a causal relationship between an accident and the injury absent expert opinion evidence. For instance, in *Tickle v. Insulating Co.*, 8 N.C. App. 5, 173 S.E.2d 491 (1970), the Court of Appeals upheld a workmen's compensation award for temporary total disability resulting from a nonspecific lower back injury (not a disc injury), despite the lack of expert medical evidence linking the back condition with the work place accident. The court held evidence that the onset pain of which plaintiff complained was simultaneous with the accident, along with other evidence in the case, was sufficient to allow the trier of fact to draw a reasonable inference that the injury was the proximate result of the accident. The Supreme Court of Oregon has noted that the "distinguishing features" of most compensation cases holding medical testimony unnecessary to make a *prima facie* case of causation include:
>
> > "[A]n uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury . . . ." *Uris v. State Compensation Department*, 247 Or. 420, 426, 427 P.2d 753, 756 (1967). (Citations omitted.)

*Click*, 300 N.C. at 168-69, 265 S.E.2d at 391-92. Our Supreme Court proceeded to state that the facts in *Click* did not present this type of situation because other evidence in the case suggested that the employee's injury was caused by an occurrence unrelated to work and at the employee's home. Accordingly, our Supreme Court held that medical testimony was needed to provide a proper foundation for the Industrial Commission's finding on the question of the injury's origin. *Id.* at 169, 265 S.E.2d at 392. These facts are readily distinguishable from the simple and uncontroverted

facts regarding the origin of the injury presented here. In its appellate brief, defendant concedes that "[t]he parties do not dispute that the appellant was injured *at work* while pulling a spinning bobbin from a spindle on April 18, 1988." (Emphasis added.) The record is devoid of any evidence that plaintiff's injury was caused by any event other than pulling the spinning bobbin from a spindle at work. More particularly, defendant has failed to produce " 'expert testimony that the alleged precipitating event could not have been the cause of the injury . . . .' " *Click*, 300 N.C. at 169, 265 S.E.2d at 392 (*quoting Uris*, 247 Or. at 426, 427 P.2d at 756 (1967)). We find the facts presented here to be an archetype of the " 'uncomplicated situation' " described in *Click*. *Id*.

Accordingly, we vacate the opinion and award of the Industrial Commission and remand for further proceedings to determine the type and amount of disability benefits to which plaintiff is entitled.

III.

[3] Plaintiff argues that the Industrial Commission "erred by denying workers' compensation benefits for medical treatment to the plaintiff on the basis that the problems for which she sought treatment were not related to her work-related injury or did not give relief, tend to effect a cure, or lessen the period of the plaintiff's disability." Defendant contends that Dr. Dickerson was the only physician that was authorized by defendant, that plaintiff was expressly told that she would not be paid for treatment provided by her own doctors, and that the treatment provided by plaintiff's four doctors (Dr. Kelly, Dr. Shaw, Dr. Phillips, and Dr. Siva) did not relate to the injury for which she seeks compensation. This Court has stated:

> A reading of G.S. § 97-25, regarding medical treatment of employees, fails to indicate any limitation on the number of physicians an employee may choose. The only requirements are that the physician be approved by the Commission, and treatment must facilitate recovery and rehabilitation. *Schofield v. Tea Co.*, 299 N.C. 582, 264 S.E.2d 56 (1980). The determinations for the Commission to make are whether there was Commission approval of plaintiff's choice of [doctors] and whether treatment was to effect a cure or rehabilitation.

*Lucas*, 88 N.C. App. at 590, 364 S.E.2d at 150. We further note that this Court has recently held that "relief from pain constitutes

'relief' as that term is used in N.C. Gen. Stat. § 97-25." *Simon*, 106 N.C. App. at 43, 415 S.E.2d at 107. Given our holding that plaintiff was entitled to the *Watkins v. Motor Lines* presumption and that plaintiff was entitled to benefits for her disability, we remand to the Industrial Commission for a determination of plaintiff's entitlement to medical expenses pursuant to G.S. 97-25 for the services provided by Dr. Kelly, Dr. Shaw, Dr. Phillips, and Dr. Siva.

For the foregoing reasons, we vacate in its entirety the opinion and award of the Industrial Commission and remand for an opinion and award not inconsistent with this opinion.

Vacated and remanded.

Judges COZORT and ORR concur.