***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Travelers Insurance Companies was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on or about April 2, 1998, as a result of which defendants filed a Form 60. Plaintiff received temporary total disability benefits from July 27, 1998 through August 17, 1998.
5. Plaintiff's average weekly wage is $675.43, which yields a compensation rate of $450.31 per week, based upon the Form 22.
6. The issues for determination are:
 a. Whether plaintiff is entitled to temporary total disability benefits from October 21, 1999 when Dr. Peter Miller took him out of work;
 b. Whether Dr. Miller or Dr. Thomas Herfurth should be authorized as plaintiff's treating physicians; and
 c. Whether plaintiff unjustifiably refused to accept suitable work.
7. The parties stipulated to the following documentary evidence:
a. I.C. Forms 18, 19, 22, 28, 28B, 33 (2), 33R, 60;
 b. Letters from plaintiff's counsel to the adjuster, dated September 16, 1999, September 27, 1999, and October 20, 1999;
 c. October 25, 1999 and November 15, 1999 termination letters;
 d. Correspondence from the adjuster, dated December 10, 1999 and December 13, 1999;
e. Records from Maiden Family Practice, 2 pages;
f. Records from Catawba Memorial Hospital, 15 pages;
g. Records of Dr. John dePerczel, 12 pages;
h. Records of Shook Family Chiropractic, 12 pages;
i. Records of Miller Orthopaedic Clinic, 1 page;
j. Records of Dr. Alfred Rhyne, 7 pages;
k. Records of Dr. Peter Miller, 10 pages;
l. Records of Pro-Active Therapy, 3 pages;
m. Records of Job Care, 1 page; and
n. Records of Unifour Pain Clinic, 44 pages.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modification and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old and was employed by defendant-employer as a truck driver. Plaintiff's duties required him to drive a furniture delivery truck and lift dressers, chests of drawers, and entertainment centers weighing up to one hundred pounds. Plaintiff began working for defendant-employer in approximately 1990.
2. On April 2, 1998 plaintiff sustained an admittedly compensable injury when his truck was rear-ended by another truck, forcing his vehicle into the rear of a camper on the Interstate 40 weigh station scales. During the course of the collision, plaintiff's head struck the rear of the truck, breaking the window.
3. After he returned home, plaintiff sought medical treatment at the emergency room of Catawba Memorial Hospital. An MRI taken on April 3, 1998 revealed plaintiff had mild desiccation at L4-5 and L5-S1. Plaintiff was eventually treated by Dr. John dePerczel, an orthopedist, who diagnosed plaintiff with contusions, neck, shoulder and back strain, and right sciatica. Plaintiff was authorized to return to work on April 27, 1998. Dr. dePerczel ordered physical therapy, steroid injections, and work hardening. By August 18, 1998 Dr. dePerczel found plaintiff had reached maximum medical improvement and retained no permanent impairment.
4. On April 5, 1999 defendants referred plaintiff to Dr. Alfred Rhyne, a board certified orthopedist, for a second opinion evaluation. Plaintiff complained of low back pain since the motor vehicle accident. Dr. Rhyne recommended a functional capacity evaluation (FCE). The results of the FCE indicated that plaintiff was capable of performing light duty work with a twenty-five pound lifting restriction and moving from sitting to standing every thirty minutes.
5. On July 26, 1999 plaintiff returned to Dr. Rhyne, at which time the doctor counseled plaintiff on the importance of cooperating with the FCE, as the prior report indicated that plaintiff did not cooperate and failed to complete the test. Plaintiff stated that he felt the test was not done properly, and he had to take pain medication during the test. After a second FCE, Dr. Rhyne found plaintiff capable of performing medium level work, with permanent work restrictions of occasionally lifting seventy-five pounds, frequently lifting thirty-five pounds and constantly lifting fifteen pounds. On August 9, 1999 Dr. Rhyne found plaintiff had reached maximum medical improvement and retained a two percent permanent partial impairment to his lumbar spine as a result of the compensable injury.
6. Defendant-employer did not have a truck driver job within plaintiff's permanent work restrictions, as set by Dr. Rhyne. On August 24, 1999 defendant-employer offered plaintiff a UPS/shipping job, which required him to lift forty pounds up to a maximum of seventy-five pounds and to frequently bend and stoop. Although plaintiff was able to gather the parts, wrap and box them without difficulty, the bending and stooping bothered his back. As a result of the back pain, plaintiff took pain medication on the job, which caused him to fall asleep on his shift. Although plaintiff's supervisor observed him sleeping on the job, he did not question plaintiff about it.
7. In August and early September of 1999 plaintiff and his wife made approximately nine or ten calls to Dr. Rhyne's office in an attempt to get prescription refills or to schedule an appointment. Dr. Rhyne's office staff advised them that defendants did not authorize the follow-up appointment.
8. On September 16, 1999 plaintiff's counsel Randy Duncan wrote to insurance adjuster Lisa House to advise that Dr. Rhyne's office refused to make an appointment for plaintiff or to write additional prescriptions. Again on September 27, 1999 Mr. Duncan wrote to Ms. House, advising that plaintiff had to go to the emergency room because Dr. Rhyne's office refused to see plaintiff on that date. Mr. Duncan sent a third letter to the adjuster on October 22, 1999 regarding plaintiff's inability to obtain treatment.
9. On September 20, 1999 plaintiff was allowed by the carrier to return to Dr. Rhyne and reported that he was working full time. Plaintiff complained of back pain, for which he obtained an additional prescription.
10. Prior to obtaining an additional appointment with Dr. Rhyne, plaintiff scheduled an appointment with neurosurgeon Dr. Peter Miller. On September 23, 1999 plaintiff presented to Dr. Miller with persistent low back pain, which radiated into the right leg, hip pain, and right leg weakness. Dr. Miller ordered a lumbar discogram, following which he ordered additional epidural injections. Plaintiff has not returned to Dr. Miller since October 18, 1999, although Dr. Miller did refer plaintiff to Dr. Thomas Herfurth, an anesthesiologist, for pain management.
11. Dr. Herfurth treated plaintiff from December 15, 1999 through August 17, 2000 for hip and back pain, restricting plaintiff to lifting no more than twenty pounds. Plaintiff would benefit from continued pain management treatment.
12. Dr. Miller stated that based upon the diagnostic testing and plaintiff's absence of back pain complaints prior to the motor vehicle accident, the accident either caused or accelerated plaintiff's back pain.
13. Based upon the lumbar discogram findings, plaintiff is not a candidate for back surgery.
14. Dr. Miller provided plaintiff with out of work notes for the period from October 21, 1999 until his appointment with Dr. Herfurth on December 15, 1999, as plaintiff was physically unable to perform the frequent bending and heavy lifting that his job required.
15. On October 25, 1999 defendant-employer sent plaintiff a letter to advise that the carrier did not authorize treatment by any doctor other than Dr. Rhyne. Therefore, defendant-employer refused to honor the work notes from Dr. Miller. On November 15, 1999 defendant-employer terminated plaintiff for being out of work without authorization.
16. On December 13, 1999 Regina Woodberry, the adjuster assigned to handle plaintiff's claim, wrote to Mr. Duncan stating that the carrier would not pay the bills for treatment plaintiff received from Dr. Miller. Although the carrier and defendant-employer took the position that Dr. Rhyne was plaintiff's authorized treating physician, Dr. Rhyne was not aware of the designation and believed that he was a second-opinion physician.
17. Since his termination, plaintiff has sought work through a temporary service and has contacted North Carolina Vocational Rehabilitation for assistance in locating work. Despite plaintiff's reasonable efforts, he has been unsuccessful finding employment. Plaintiff would benefit from additional vocational rehabilitation services to assist him in returning to gainful employment.
18. Although the carrier and defendant-employer have maintained that plaintiff sought unauthorized treatment from Dr. Miller and Dr. Herfurth, plaintiff only sought such treatment after he was unable to obtain additional treatment from Dr. Rhyne or any other doctor to whom the carrier had referred him. Even after plaintiff advised the carrier of difficulty obtaining treatment from Dr. Rhyne, the carrier did not document any steps taken to arrange additional evaluations for plaintiff. Therefore, the Full Commission specifically finds that the plaintiff made appropriate efforts to comply with the instructions from the carrier and was forced to obtain other care only after the carrier failed to make arrangements for him. As plaintiff made repeated requests for treatment in August and September of 1999 to the adjuster which went unanswered, his treatment by Dr. Miller and Dr. Herfurth is authorized.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Defendants admitted compensability of plaintiff's injury by accident on April 2, 1998 by filing with the Commission a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Simsv. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
2. In order to meet the burden of proving disability, plaintiff must produce one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., ___ N.C. App. ___, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993) (citations omitted). Once a plaintiff meets the initial burden of showing disability, the burden shifts to defendants to show plaintiff is employable. Radica v. Carolina Mills, 113 N.C. App. 440,439 S.E.2d 185 (1994).
3. In the instant case, plaintiff met his initial burden to show that he is disabled. Plaintiff has work restrictions of no lifting over twenty pounds. He has made a reasonable effort to find work, but has been unsuccessful in his search for employment. Demery v. Perdue Farms,Inc., supra; Russell v. Lowes Product Distribution, supra. Defendants' evidence failed to show that plaintiff is employable. Radica v. CarolinaMills, supra.
4. As a result of the compensable injury, plaintiff is disabled from any employment and entitled to total disability compensation at the rate of $450.31 per week beginning October 21, 1999 and continuing until further Order of the Commission. N.C. GEN. STAT. § 97-29.
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. §§ 97-2(19), -25. Plaintiff is also specifically authorized to have Dr. Peter Miller and Dr. Thomas Herfurth as his authorized treating physicians, and defendants shall pay for all treatment provided by the physicians or ordered by these physicians which are causally related. Plaintiff is also entitled to have defendants provide vocational rehabilitative services to assist him in returning to gainful employment.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay total disability compensation to plaintiff at the rate of $450.31 per week beginning October 21, 1999 and continuing until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. As plaintiff has not completed medical treatment nor reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing before the Commission to resolve this matter.
5. Defendants shall pay the costs.
This the ___ day of October 2001.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
LKM/mhb