***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Zenith Insurance Company is the carrier on risk.
4. Plaintiff's average weekly wage was $260.00.
5. Plaintiff was employed by defendant-employer as a cashier from April 2000 until the date of the alleged accident on 27 June 2000.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
 *********** EVIDENTIARY RULINGS
Plaintiff's counsel submitted a letter from Dr. Herman E. Schmid, M.D., and Patricia Craven, Family Therapy Intern. Defendants objected to the admission of these written statements. These documents for plaintiff's treatment were not produced at the hearing before the Deputy Commissioner, and the parties elected not to depose physicians or health care providers. Therefore, defendants' objection to the admission of these statements is SUSTAINED.
 ***********
Based upon all the competent evidence adduced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 54 years old and had received a high school education as well as obtaining a bachelors degree in Business Administration from Baltimore Institute. Plaintiff received a bachelors degree in Business Management from Los Angeles Community College and West Coast University.
2. Plaintiff has worked as a teacher for 17 years and taught in Community Colleges in Texas, California and North Carolina. Plaintiff had previously taught at Forsyth Technical College until September 1990. Plaintiff left teaching when she gave birth to her child.
3. Plaintiff eventually returned to school at Salem College and attended for two years. Plaintiff transferred to Winston Salem State University where she pursued course work from September 1995 through 20 May 2000. Plaintiff has completed all but two classes required for an additional degree in sociology and religion.
4. Plaintiff began her employment with defendant-employer in April 2000 as a cashier. Plaintiff's job duties included working at the cash register, emptying trash cans, filling the ice machine and sweeping and mopping the floors.
5. While plaintiff was mopping the floor close to the end of her shift on 27 June 2000, she felt a pain in her lower back. Plaintiff continued to work and finished mopping the floor. Plaintiff informed Stacey Jessup, a co-worker and Joyce Taylor, the store manager, about her back pain.
6. Joyce Taylor stated that plaintiff did report her back pain, but did not indicate this pain was due to any work related injury.
7. Plaintiff awoke the next morning with a headache, but returned to work. During the course of her duties at work, plaintiff felt her neck stiffen up, with pain radiating down her back. Plaintiff obtained some Tylenol from Ms. Jessup and continued to work.
8. On 29 June 2000, plaintiff reported to Ms. Taylor upon her arrival that she was "hurting." Ms. Taylor told plaintiff to report to another store, but plaintiff refused, claiming "it was too far." Later during her shift, plaintiff was stocking groceries. In so doing, plaintiff was required to lift crates of sodas. While lifting the crates, plaintiff experienced low back pain. Plaintiff continued to perform her duties pricing goods, but sat on the floor to avoid any further bending. When the pricing was completed, plaintiff informed Ms. Jessup that she was in pain and asked if she could leave early. Ms. Taylor permitted plaintiff to leave at that time.
9. On Friday, 30 June 2000, plaintiff awoke with a headache and back and neck pain. Plaintiff sought medical treatment at Baptist Hospital emergency room, and reported that she had been injured at work while mopping the floor and again while lifting crates. Dr. Earl Schwartz, the attending physician in the emergency room, diagnosed plaintiff with musculoskeletal neck and back pain and prescribed Motrin over a two week period. Plaintiff was instructed to follow up with her regular physician within the next seven days and was written out of work for Saturday, 1 July 2000. Plaintiff was not scheduled to return to work until Monday, 3 July 2000. Dr. Schwartz released plaintiff to return to work at that time, with a lifting restriction of 20 pounds for one week.
10. Upon leaving the emergency room, plaintiff reported to work and gave the medical papers to Ms. Taylor. Ms. Taylor informed plaintiff that she was not covered by insurance, and plaintiff stated that she would use her Medicaid to pay the medical bill. Plaintiff did not stay at work.
11. Plaintiff returned to work on Saturday, 1 July 2000, to make up for the day she missed. The offices of plaintiff's family physician, Dr. Herman Schmid of the Senior Care Center, were closed the week of 4 July. Plaintiff worked the entire week under medication, and presented to Dr. Schmid on Monday, 10 July 2000. Dr. Schmid noted muscle spasms and tenderness, and diagnosed plaintiff with a back strain. He prescribed medication and wrote plaintiff out of work from 11 July 2000 through 17 July 2000. He also ordered x-rays of plaintiff's back and scheduled her for physical therapy.
12. On 11 July 2000, plaintiff had x-rays taken of her cervical spine that indicated mild degenerative disc disease at the C5-6 level. Plaintiff was diagnosed with spondylosis involving the C5-6 level and mild facet arthropathy of the lower lumbar spine.
13. On 14 July 2000, plaintiff returned to Senior Care Center and was seen by Dr. James Campbell. Dr. Campbell diagnosed plaintiff with a cervical strain and lumbar strain and prescribed work restrictions of lifting no more than ten pounds, no bending or stooping for the next 30 days.
14. Plaintiff began physical therapy at North Carolina Baptist Hospital on 20 July 2000. Plaintiff continued to treat at Senior Care through August 2000. On 9 August 2000, Dr. Campbell excused plaintiff from work until her physical therapy ended in September 2000 and she was re-evaluated. On 30 August 2000, Dr. Campbell indicated plaintiff would be out of work for six months, and he instituted restrictions of no bending, stooping or lifting over 10 pounds.
15. Plaintiff continued to treat with Dr. Schmid through 28 October 2000 and continued to report back pain at each visit. Plaintiff continued her physical therapy until 14 September 2000, when it was determined that she had plateaued and thus physical therapy should be discontinued. Plaintiff was instructed to continue her exercises at home, and it was suggested that should plaintiff desire to return to work, she might benefit from a work hardening program.
16. Plaintiff returned to physical therapy at Baptist Hospital on 15 November 2000. At that time, plaintiff was using a cane to walk and complained of right side low back pain and occasional headaches. Plaintiff was scheduled for therapy one or two times per week, for a total of eight sessions. The final therapy note is dated 19 December 2000, at which time plaintiff continued to ambulate with a cane and reported no change in her complaints of pain.
17. In July 2000, plaintiff was informed that she was being transferred to another store due to a need at that location for additional help. Plaintiff refused the transfer due to the distance of the store from her home. Plaintiff was subsequently terminated from her employment with defendant-employer upon declining the position at the other store.
18. The description of plaintiff's job duties testified to by both plaintiff and her supervisor, indicates that plaintiff's medical restrictions of no bending or stooping for 30 days and no lifting of more than 10 pounds would have made her employment as a cashier with defendant unsuitable. Accordingly, plaintiff's refusal to accept the transfer to another store where she would be performing the same duties as her pre-injury job is deemed justified. At the time defendant sought to transfer plaintiff to another store her medical and work status was uncertain. There is no evidence that defendant was prepared to offer plaintiff employment within her restrictions. Dr. Campbell's determination on 30 August 2000 that plaintiff would be unable to return to work for at least six months further supports plaintiff's decision to refuse transfer to another store where she would be performing "cashier" duties.
19. Because the parties chose not to depose plaintiff's treating physicians in this case, there is no expert opinion testimony stating that plaintiff's work related specific traumatic incidents caused her back problems. However, the Full Commission finds that in this case, the sprain/strain type of complaints plaintiff experienced occurred contemporaneously with the lifting incidents, and plaintiff's testimony about the occurrence and her resulting complaints is accepted as credible. The type of activities that plaintiff was performing on 27 and 29 June 2000 when she felt the immediate onset of back pain are generally known in the lay community to be capable of causing muscle pain and the facts are so simple and uncontradictory as to permit a finding of a causal relationship between plaintiff's specific traumatic incidents and her injury absent expert opinion evidence. The evidence shows that the onset of plaintiff's pain was simultaneous with the incident on 27 June 2000, and that plaintiff reported her back pain to a coworker and to her supervisor immediately. Plaintiff also reported increased low back pain to her supervisor after lifting crates of sodas on 29 June 2000. Further, plaintiff consistently reported the same incidents each time she met with treating physicians regarding her back condition. Lastly, there is no alternative theory to explain plaintiff's back strain. Therefore, the greater weight of the evidence supports the finding that on 27 June 2000, plaintiff suffered a specific traumatic incident resulting in a strain of her lower back, and that the strain was further exacerbated by a specific traumatic incident which occurred on 29 June 2000.
20. Plaintiff has the burden of proving continuing disability. Dr. Campbell's medical report stating plaintiff would not be able to work for 6 months covered the period from 30 August 2000 to 28 February 2001. Therefore, as a result of plaintiff's work-related injury, she was disabled beginning on 11 July 2000 and continuing until at least 28 February 2001. The undersigned note that plaintiff testified that Dr. Schmid lowered her lifting restrictions sometime after February 2001; however this testimony is not supported by any medical evidence in the record. Without further medical evidence of disability, the Full Commission is unable to find that plaintiff was incapable of working due to her injury after 28 February 2001.
21. At the time of her injury, plaintiff's average weekly wage was $260.00, yielding a weekly compensation rate of $173.34.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 27 June 2000, plaintiff suffered a specific traumatic incident resulting in a strain of her lower back. The strain was further exacerbated by a specific traumatic incident which occurred on 29 June 2000. As a result of her injury, plaintiff has been temporarily totally disabled from employment from 11 July 2000 through 28 February 2001. Plaintiff has not proven continuing disability after 28 February 2001. N.C. Gen. Stat. § 97-2(6).
2. As a result of her disability, plaintiff is entitled to temporary total disability compensation in the weekly amount of $173.34, beginning on 11 July 2000 and continuing until 28 February 2001. N.C. Gen. Stat. § 97-29.
3. Expert testimony establishing a causal relationship between the specific traumatic incidents and plaintiff's resulting back strain is not necessary in this case. In Radica v. Carolina Mills, 113 N.C. App. 440,439 S.E.2d 185 (1994), the Court of Appeals held that expert causation testimony is not required where "the facts are so simple, uncontradictory, and obvious as to permit a finding of a causal relationship between an accident and the injury absent expert opinion evidence." The Court noted that in Tickle v. Insulating Co., 8 N.C. App. 5,173 S.E.2d 491 (1970), the Court of Appeals upheld a workmen's compensation award for temporary total disability resulting from a nonspecific lower back injury, despite the lack of expert medical evidence linking the back condition with the work place accident. The Court held that evidence showing the onset pain of which plaintiff complained was simultaneous with the accident, along with other evidence in the case, was sufficient to allow the trier of fact to draw a reasonable inference that the injury was the proximate result of the accident. The Court further noted that a defendant's lack of expert testimony that the alleged precipitating event could not have been the cause of the injury is a factor of some significance to be considered. In the instant case, defendants have not offered any expert testimony regarding plaintiff's injury. For these reasons, the Full Commission concludes that plaintiff has met her burden of demonstrating a causal connection between the specific traumatic incidents which occurred on 27 June 2000 and 29 June 2000, and the resulting injury to her back.
4. Plaintiff is entitled to have defendants pay for all medical expenses reasonably related to the work related injury to plaintiff's back. N.C. Gen. Stat. § 97-25.
5. Plaintiff's refusal to accept a transfer of her position to another store operated by defendant-employer was justified, based upon the description of the job duties and the restrictions placed upon plaintiff by her treating physicians. N.C. Gen. Stat. § 97-32.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendants shall pay to plaintiff temporary total disability compensation in the weekly amount of $173.34, beginning on 11 July 2000 and continuing until 28 February 2001. This award has accrued and shall be paid in a lump sum, subject to attorney's fees approved below.
2. Defendants shall pay for plaintiff's accrued medical expenses for treatment related to her work injury of 27 and 29 July 2000, when bills for such treatment have been approved pursuant to Industrial Commission guidelines.
3. An attorney's fee for plaintiff's counsel is hereby approved in the amount of 25% of the compensation awarded to plaintiff in Paragraph 1 above. Defendants shall pay one fourth of the lump sum payment due plaintiff directly to plaintiff's counsel.
4. The Full Commission expressly reserves for later determination the issue of whether plaintiff remains disabled after 28 February 2001.
5. Defendants shall pay the costs of this action.
This the ___ day of December, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER