***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission which has jurisdiction of this matter.
2. An employer/employee relationship existed at the time of the injury that is the subject of this matter.
3. The employer was insured by American Home Assurance on the date of injury.
4. The employee sustained a compensable injury by accident on or about November 19, 1998.
5. The following were entered into the evidence of record by the parties at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit #1-Plaintiff's medical records
b. Stipulated Exhibit #2-I.C. Forms
c. Stipulated Exhibit #3-Defendants' First Set of Interrogatories and Request for Production of Documents
d. Stipulated Exhibit #4-Plaintiff's Answers and Responses to Defendants' First Set of Interrogatories and Request for Production of Documents.
6. The issues before the Commission are whether additional conditions are causally related to plaintiff's compensable accident. Plaintiff is seeking additional medical treatment and payment of additional temporary total disability benefits.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before Deputy Commissioner Ledford, plaintiff was 36 years of age. Plaintiff has a high school education. He began working for the defendants on October 26, 1998 as a loader in the shipping department. Plaintiff took supplies off a conveyor belt and loaded them onto a flat bed trailer truck. The heaviest weight he lifted was about 100 pounds. Plaintiff worked 40 hours per week at a wage of $9.25 per hour.
2. Plaintiff sustained an injury by accident at work on November 19, 1998 as he was loading and stacking a box with a table and chairs in it. He estimated it weighed over 40 pounds. The box slipped through his hands, and he hyper-extended his neck, and the box struck him on the forehead.
3. Plaintiff was seen by Dr. Doug Campbell at Occupational Health Center on November 23, 1998. Plaintiff complained of pain in the mid-spine area. In examining Plaintiff, Dr. Campbell noted that he was able to move and flex with no apparent difficulty or discomfort, especially when distracted. Dr. Campbell diagnosed plaintiff with a thoracic contusion/sprain and followed his care for approximately the next two months. Plaintiff continued to complain of diffuse thoracic pain.
4. On January 21, 1999, plaintiff was seen on referral by Dr. Barry White at Cape Fear Neurology. Dr. White found that plaintiff had no neurologic deficits, diagnosed a neck sprain and indicated that plaintiff could work light-duty. Plaintiff had follow-up visits with Dr. White. An MRI was performed on March 22, 1999 that revealed a small syringeal hydromyelia between C-5 and T-1. After reviewing these MRI results, Dr. White recommended an MRI of the brain, which was not approved at that time, but was later carried out.
5. On August 19, 1999, plaintiff was seen by Dr. Mitchell Freedman, a neurologist in Raleigh, for an independent medical examination. Plaintiff's neurological examination was normal. Dr. Freedman explained that a syringeal hydromyelia ("syrinx"), as shown on plaintiff's MRI, was a cysting area, or a cavity within the spinal cord. A syrinx can be a congenital abnormality, can be associated with the formation of a tumor and can also be the result of trauma where the spinal cord is bruised. A syrinx can also be associated with another congenital condition, a Chiari formation.
6. Dr. Freedman concluded that plaintiff had sustained a muscular injury as a result of his work accident. He also found that some of plaintiff's ongoing pain complaints are related to his muscular strain from the accident. He determined that plaintiff could return to work and found no reason to limit plaintiff's lifting or bending, but did suggest some restrictions as to stooping and turning. Dr. Freedman found no gradable impairment.
7. An MRI of plaintiff's brain was performed on December 20, 1999 that showed a Chiari formation with tonsillar ectopy. A Chiari formation refers to a congenital abnormality where the back part of the skull is too small compared to the size of the brain, such that the lower portion of the brain may protrude out of the skull, down the upper part of the neck.
8. On February 22, 2000, plaintiff was evaluated by Dr. John Gorecki, a neurosurgeon, who was formerly associated with Duke University. A neurological examination was negative and Dr. Gorecki diagnosed a cervical syrinx triggered by an acute cervical hypertension injury with associated Chiari malformation. Plaintiff reported to Dr. Gorecki that he was having intermittent feelings of electric shock and numbness affecting his hands and feet. Dr. Gorecki felt that plaintiff was capable of light-duty work.
9. The testimony of both Dr. Gorecki and Dr. Freedman establishes that plaintiff's Chiari malformation is a pre-existing, congenital condition. Both physicians also testified that there is an association between a Chiari malformation and congenital syrinx. While Dr. Gorecki believes the syrinx may have pre-existed plaintiff's accident, but could have become symptomatic due to the accident, Dr. Freedman is of the opinion that the syrinx was pre-existing and not aggravated by the accident. Dr. Freedman based this on the brain MRI, which he believed confirmed that plaintiff's syrinx was congenital and unrelated to his work accident.
10. Dr. Freedman noted that the radiologist had commented that plaintiff's MRI showed no evidence of hemosiderin, which would be residual from a hemorrhage or bruise on his spinal cord. Dr. Freedman testified that this is significant because it indicates that the syrinx was most likely present before the plaintiff's actual injury in November, and was not caused by the trauma of plaintiff's accident.
11. Dr. Freedman also stated that the typical symptoms from a syrinx include atrophy of the hands, sensory loss in a "cape-like" distribution over the shoulders, upper arms and hands and possible increased reflexes in the legs. Plaintiff did not exhibit any of these symptoms when Dr. Freedman examined him in August 1999. Where plaintiff later complained of electrical kinds of symptoms, such as numbness or paralysis in his hands and feet, Dr. Freedman testified these would be related to cord compression and the syrinx, but not to the accident.
12. Dr. Freedman's explanation of whether plaintiff's symptoms were materially aggravated or caused by his November 19, 1998 accident is found to be reasonable and persuasive. Upon examining plaintiff, Dr. Freedman found no changes in the power or coordination of Plaintiff's arms or legs, no trophic changes (which would have evidenced changes in plaintiff's anatomic nervous system) and found that plaintiff's neurological examination was normal. The lack of these objective findings is significant as Dr. Freedman explained that plaintiff did not have symptoms consistent with a Chiari malformation or syrinx at the time he was evaluated in August 1999. Nine months after his work accident, plaintiff exhibited no symptoms attributable to his Chiari malformation or syrinx, which makes it unlikely that the syrinx was aggravated by the accident.
13. Dr. Gorecki's indication that plaintiff's injury at work may have triggered his symptoms based upon an alleged temporal relationship is based upon an incorrect history. However, Dr. Gorecki did not examine plaintiff until February 22, 2000, over 15 months after the accident. Dr. Gorecki understood that plaintiff was complaining of intermittent paralysis, electric shock and numbness affecting his hands and feet since the date of his accident, which is not accurate when the medical records are reviewed. Plaintiff complained of pain, but did not report these other symptoms until over one year after his accident.
14. As set forth above, plaintiff's Chiari malformation and syrinx, are both pre-existing conditions, which were not significantly aggravated by his work-accident. Although plaintiff may need additional medical treatment for those conditions, including possible surgery, the workers' compensation carrier is not responsible for such treatment of these pre-existing unrelated conditions. At the hearing before Deputy Commissioner Ledford, plaintiff described symptoms including numbness and paralysis, which, as noted above, can be associated with a Chiari malformation and syrinx. Although plaintiff also complained of pain, the other symptoms seem to be the primary reason that plaintiff has been out of work.
15. Plaintiff does have some ongoing pain complaints, which Dr. Freedman has testified are related to his accident and the neck strain. He should be treated conservatively with pain medications or other recommendation of his treating physician.
16. The evidence fails to show that plaintiff is incapable of working in any employment at this time. Dr. Campbell, Dr. Gorecki and Dr. Freedman all indicated that he was capable of light-duty work. In terms of his November 19, 1998 accident, Dr. Freedman felt that plaintiff sustained a neck strain and felt that it would be reasonable to limit his stooping and turning. However, this limitation was noted in August 1999 and plaintiff was not subsequently assigned restrictions for a neck strain.
17. The Full Commission find based upon the greater weight of the medical evidence plaintiff has made no effort to find work since the accident and since being terminated from employment with defendants.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The greater weight of the medical evidence establishes that plaintiff's current conditions of the Chiari malformation and syrinx, are pre-existing conditions, which were not significantly aggravated by his work-accident of November 19, 1998. Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950); Duncan v. City of Charlotte,234 N.C. 86, 66 S.E.2d 22 (1951).
2. The medical evidence does show that plaintiff has some ongoing pain complaints in his neck related to his injury by accident of November 19, 1998. Plaintiff is entitled to reasonably necessary pain management for the same. N.C. Gen. Stat. § 97-2(19).
3. The evidence fails to establish that plaintiff continues to be unable to earn wages in any employment and therefore disabled as a result of his November 19, 1998 accident. The evidence fails to establish that plaintiff's current condition is disabling. Radica v. Carolina Mills,113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994); Russell v. LowesProd. Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for reasonably necessary pain management of plaintiff's neck pain, but are not responsible for further medical treatment for his other head or cervical conditions, specifically the Chiari malformation and syrinx. Defendants shall pay for reasonably necessary medical examinations or tests that have been administered to date to assess plaintiff's condition, including the cervical MRI and the brain MRI, that had been recommended by Dr. White.
2. Under the law, Plaintiff's claim for further total or partial disability compensation benefits must be, and the same is hereby DENIED.
3. Defendants shall pay the costs, including all expert witness fees previously approved.
This the ___ day of May 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CS/kjd