***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Kemper Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage was $257.59, yielding a compensation rate of $173.06.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on November 14, 1994.
6. A Form 21 was approved by North Carolina Industrial Commission on January 11, 1995.
7. A Form 26 was approved on July 7, 1997.
8. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
9. Industrial Commission Forms were stipulated into evidence as Stipulated Exhibit 2.
10. Plaintiff's answers to interrogatories and responses to defendants' second set of interrogatories were stipulated into evidence as Stipulated Exhibit 3.
11. Plaintiff's income tax returns were stipulated into evidence as Stipulated Exhibit 4.
12. The Notice of Dismissal in 97CRS12703 was stipulated into evidence as Stipulated Exhibit 5.
13. The issues before the Commission are: (i) whether plaintiff is entitled to further compensation after his termination from employment on June 5, 1997; (ii) whether plaintiff's back pain was causally related to his compensable injury by accident on November 14, 1994; (iii) if so, what compensation, if any, is due plaintiff; and (iv) whether plaintiff is entitled to a reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 28 years old and a high school graduate. Plaintiff began working for defendant-employer as a forklift operator and warehouseman five months prior to his compensable injury by accident.
2. On November 14, 1994, plaintiff sustained a compensable injury by accident which arose out of and in the course of his employment with defendant-employer. Plaintiff was operating the forklift on a wet floor. When plaintiff made a sharp turn, the forklift flipped over and crushed his right leg. As result of this injury by accident, plaintiff sustained an amputation above the right knee.
3. Defendants accepted the claim as compensable on a Form 21 approved by the Industrial Commission on January 11, 1995. A Form 26 was subsequently filed by defendants and approved by the Industrial Commission on July 7, 1997.
4. Plaintiff returned to work for defendant-employer in May 1995. At this time his job restrictions involved limited walking and standing in a moderate temperature controlled environment. Plaintiff initially worked on a part-time basis running errands in a company vehicle. Defendants paid temporary partial disability compensation during his period.
5. Plaintiff eventually worked his way back to full-time employment in October 1995 and was assigned to the position of repacking product for defendant-employer. This job is a position within defendant-employer's employ that was regularly filled and involved putting damaged beer back into the warehouse.
6. Plaintiff continued to work for defendant-employer in the repack position until January 31, 1997, when he was taken out of work by Dr. Kevin Scully, plaintiff's treating physician. Plaintiff was experiencing difficulty working due to problems with his prosthesis which rubbed his leg raw, causing sores and discomfort. In a letter to defendant-employer dated March 18, 1997, Dr. Scully stated:
 "Mr. Smith is a well-motivated worker who is not pleased by being absent from work. He is, however, unable to walk on a stump that is macerated to the point of having open sores. Today, I asked Fred [plaintiff] if there was a job available for him at Jackson Beverage that didn't require prolonged standing or walking. The ideal job for Fred, or any other above the knee amputee for that matter, would be one that offers the opportunity for frequent sitting breaks."
Dr. Scully noted further in his letter that plaintiff had experienced no problems performing the job running errands and wanted to return to that job in order to improve his work attendance.
7. Defendants resumed payment of temporary total disability compensation to plaintiff from January 31, 1997 through March 19, 1997. Plaintiff remained out of work until March 20, 1997. Despite Dr. Scully's recommendations that plaintiff return to a job with less standing and walking, defendant-employer returned plaintiff to the same repacking position.
8. Plaintiff continued to experience problems with the amputated leg. In April 1997 plaintiff fell on the wet floor at work, injuring his left wrist.
9. On May 30, 1997 fourteen cases of beer belonging to defendant-employer were found in plaintiff's personal vehicle on company property. Plaintiff was working on the premises at that time. Defendant-employer had not authorized the possession of this beer and there was no paperwork to support the removal of beer from the premises into plaintiff's vehicle.
10. Plaintiff acknowledged at the Deputy Commissioner hearing that he was aware that having unauthorized beer in a personal vehicle was a violation of the company's policy and procedures.
11. Plaintiff was terminated from his employment with defendant-employer on June 5, 1997. Two coworkers were also terminated as a result of this incident.
12. Plaintiff was charged with embezzlement from defendant-employer but these criminal charges were ultimately dismissed approximately two years later after his codefendants refused to testify against plaintiff.
13. Plaintiff was terminated from employment with defendant-employer for theft of company property, which was conduct that was unrelated to his compensable injury by accident and was misconduct that resulted in termination of other employees.
14. Plaintiff continued to experience irritation of the stump of his leg, caused by the prosthesis. He had at least one other fall on February 5, 1998 caused when the knee of the prosthesis twisted, resulting in an injury to his right hip. Plaintiff experienced chronic phantom limb sensation, as well as periods during which the stump was so irritated and sore that he was unable to wear the prosthesis.
15. After plaintiff was terminated by defendant-employer, Dr. Scully recommended that plaintiff meet with a vocational counselor and that plaintiff needed to find a job that was predominantly carried out in a sitting position in an air conditioned environment. The vocational counselor suggested that plaintiff might need retraining.
16. After his termination, plaintiff sought and obtained part-time employment through temporary placement services. Plaintiff was employed for short periods of time in 1998 and 1999 as a cleaner, housekeeper, golf course attendant and laborer.
17. In the spring of 1998, plaintiff also registered as a student at Cape Fear Community College and at the time of the Deputy Commissioner hearing continued to pursue a degree in recreational therapy. Plaintiff's enrollment at the community college was a reasonable attempt at vocational rehabilitation given the totality of the circumstances in this case. Plaintiff continued to work part-time and attend school until September 1999 when he stopped working because of the continued painful irritation caused by the prosthesis and because he was unable to find any jobs that he was able to perform.
18. As the result of his compensable injury by accident, plaintiff is disabled and unable to earn the wages which he received at the time of the injury in the same or any other employment.
19. As the result of his compensable injury by accident, plaintiff sustained a 100% permanent functional impairment to his right leg. It appears from the stipulated Forms 26 and 28B that plaintiff was paid permanent partial disability compensation for 200 weeks in a lump sum for the loss of his right leg, for the period beginning March 20, 1997 and continuing until January 20, 2001.
20. As the result of the compensable injury by accident, plaintiff will need medical care for the remainder of his life, including care of the stump and occasional refitting of the prosthesis as the shape of the stump changes.
21. Plaintiff failed to prove by the greater weight of the evidence that his complaints of back pain are causally related to his compensable injury by accident on November 14, 1994.
22. Defendants have not defended this action without reasonable grounds.
 ***********
Based on the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on November 14, 1994. N.C. Gen. Stat. § 97-2(6).
2. The parties entered into a Form 21 Agreement for Compensation in this case, which was approved by the Commission on January 11, 1995. Therefore, plaintiff met his initial burden of proving disability at that time. That presumption of disability continues until defendants offer evidence to rebut the presumption. Radica v. Carolina Mills,113 N.C. App. 440, 439 S.E.2d 185 (1994).
3. In this case, defendants showed that as a result of plaintiff's personal conduct on May 30, 1997 relating to his employment and not to his compensable injury by accident, plaintiff was terminated on June 5, 1997 for misconduct for which other, nondisabled employees were also terminated. "If the employer makes such a showing, the employee's misconduct will be deemed to constitute a constructive refusal to perform the work provided and consequent forfeiture of benefits for lost earnings, unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability." Seagraves v. Austin Company,123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996).
4. In the case at bar, plaintiff has shown by the greater weight of the evidence that he is unable to obtain other employment, except for part-time, temporary jobs, and that his inability to find work is due to his work-related disability. Plaintiff's ability to sporadically perform temporary jobs is not evidence of plaintiff's ability to earn the same or greater wages as before his injury. Daughtry v. Metric ConstructionCo., 115 N.C. App. 354, 446 S.E.2d 590, disc. rev. denied, 338 N.C. 515,452 S.E.2d 808 (1994). Therefore, plaintiff is disabled and is entitled to receive total disability compensation at the rate of $173.06 per week from June 5, 1997 and continuing until plaintiff returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29. This amount is subject to a deduction for wages earned by plaintiff in sporadic, temporary employment in 1998 and 1999.
5. Defendants have already paid compensation to plaintiff for the period March 20, 1997 through January 20, 2001 for the permanent partial disability rating to plaintiff's leg. Plaintiff cannot receive a double recovery during this period. Plaintiff will be deemed to have chosen the more munificent remedy and therefore the compensation for plaintiff's rating shall be treated as if plaintiff had received payments for the applicable period under N.C. Gen. Stat. § 97-29 in order to prevent double recovery. Defendants shall commence payment of total disability compensation after expiration of the 200 weeks during which defendants paid permanent partial disability compensation. Farley v. N.C. Departmentof Labor, 146 N.C. App. 584, 553 S.E.2d 231 (2001).
6. Plaintiff is entitled to payment by defendants of medical expenses incurred or to be incurred as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.
7. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee awarded below, defendants shall pay plaintiff total disability compensation at the rate of $173.06 per week beginning June 5, 1997 and continuing until plaintiff returns to work or until further Order of the Commission. Payment of this compensation is subject to a deduction for wages paid plaintiff for temporary employment in 1998 and 1999. In order to prevent double recovery, payment of this compensation shall commence upon expiration of the 200 week period during which defendants paid plaintiff for his permanent partial disability rating.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable injury by accident on November 14, 1994.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel and shall be deducted from any accrued compensation and forwarded directly to plaintiff's counsel. Thereafter, defendants shall forward every fourth compensation check to plaintiff's counsel.
4. Defendants shall pay the costs.
This ___ day of July, 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER