***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties.
4. Brentwood Services Administrators, Inc. is the servicing agent for the self-insured North Carolina Auto Dealers Association. Employer is a member of the self-insured North Carolina Auto Dealers Association.
5. Plaintiff's medical records were submitted as Stipulated Exhibit 2. The parties agreed they may supplement the medical records offered at the hearing with additional records previously requested and not yet received, or otherwise obtained during this hearing and the depositions to follow.
6. Pertinent Industrial Commission forms and filings were submitted as Stipulated Exhibit 1. This included the prior Opinions and Awards of the Deputy Commissioner and Full Commission.
7. Pursuant to an Opinion and Award filed on October 17, 2001, the Full Commission found that the Plaintiff suffered a compensable injury and that Defendants should pay for all medical treatment related to Plaintiff's back, shoulder, leg, head injury, and psychiatric and psychological treatment. The Full Commission also awarded indemnity benefits to Plaintiff for as long as he was out of work because of disability. *Page 3 
 ***********
As set forth in the Pre-Trial Agreement and in this Opinion and Award, the Commission addresses the following:
 ISSUE
1. Whether Defendants have demonstrated that Plaintiff has wage earning capacity, such that Defendants may now terminate ongoing payments of total disability compensation?
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This claim was the subject of an Opinion and Award filed by Deputy Commissioner Wanda Blanche Taylor on November 8, 2000. Deputy Commissioner Taylor found that Plaintiff sustained a compensable injury by accident, including a closed head injury. She awarded payment of temporary total disability benefits and medical treatment to Plaintiff.
2. Defendants appealed Deputy Commissioner Taylor's Opinion and Award. The final "Corrected Opinion and Award for the Full Commission" was filed on October 17, 2001, affirming the Opinion and Award of Deputy Commissioner Taylor. Both Opinions are included in the parties' Stipulated Exhibit 1. This decision was not appealed from and those findings of facts and conclusions of law are part of the official record.
3. The Defendants filed a Form 33 on May 15, 2006 seeking to terminate plaintiff's ongoing benefits, and contending that plaintiff is not disabled to the extent that he and his treating physicians claim. *Page 4 
4. As reflected in the prior Opinion and Award, prior to his compensable injury by accident, plaintiff had been employed with defendant-employer for approximately nine years. For the first four years, he was worked as a sales manager in defendant-employer's automobile dealership. For the last five years, he was the general sales manager, where approximately 33 people reported to him. His duties were numerous and varied, and included overseeing sales and occasionally negotiating vehicle sales prices with customers, handling all advertising, with a budget of about $50,000 per month, coordinating between the service department and body shop, and handling almost all customer relations and complaints.
5. As previously found, plaintiff sustained an injury by accident on October 27, 1997, when he slipped and fell on the cement floor of the dealership's service department, landing on his side, hitting his elbow, his knee and then falling flat on his back, and striking his head on the cement floor. Plaintiff was thereafter assessed with a closed head injury.
6. The Full Commission previously found that plaintiff's problems with his attention, concentration, emotionality, impulsivity, and irritability are typical of someone who has a closed head injury and that plaintiff could no longer work in sales. The Full Commission found that Plaintiff did not present himself well, makes poor social plans, judgments, and has poor social interactions, and would need a very structured environment with little exposure to the public. At the time of the Full Commission review, plaintiff had made "several unsuccessful trial attempts to work."
7. The defendants engaged the services of a private investigating service, and Charles Savage of Blackman Detective Services conducted surveillance of plaintiff in May 2005, April 2006 and May 2006. Out of thirteen days of surveillance, the investigator captured *Page 5 
plaintiff on video on nine days, some of it for extended periods, but most of it of limited duration and quality.
8. The video shows that plaintiff is mentally and physically capable of playing golf for a complete afternoon, including being able to swing at balls, make practice swings, retrieve various golf clubs from his golf bag, and use a telescopic pole to fish balls out of the water.
9. In April 2006, plaintiff was observed at his son's business for at least seven days. Plaintiff remained at the business for almost a complete eight-hour business day on several occasions. He was at the business for six hours on April 19 and April 20, for seven hours on April 7, April 27 and April 28, and ten hours on May 18, 2006. However, the video surveillance fails to demonstrate activity for most of the time that plaintiff was at the business.
10. The video shows plaintiff performing some limited tasks outside his son's business, such as lifting a screen printing board up in the air to look for imperfections and pulling pieces of masking tape off screen printing boards, and unloading multiple boxes from the trucks of shipping vendors and carrying the boxes into his son's business, and loading multiple boxes into his son's truck. The Full Commission finds this is evidence that the plaintiff has the physical capacity to engage in varied tasks that might be needed in employment. However, they do not address plaintiff's mental capacity, which is the province of his treating mental health specialists.
11. In reviewing the video DVD, other than the video of plaintiff engaging in golf activities and some limited activity outside of his son's business, the Full Commission finds the video unpersuasive.
12. Since his injury of October 27, 1997, plaintiff has remained under the continual care of two authorized treating medical specialists: Dr. James Pawlowski, a psychiatrist, and Dr. Christy Jones, *Page 6 
a neuropsychologist, for treatment of his compensable closed head injury. These two specialists have worked in tandem regarding their treatment of plaintiff.
12. Dr. Jones originally examined plaintiff on November 2, 1998. Dr. Jones noted that plaintiff was exhibiting impulsive behavior, procrastination, expressive speech defects, problems with his sleep patterns, and problems with concentration. Plaintiff continues to exhibit these behaviors. He continues to have problems focusing on the task at hand. He has difficulties working with numbers. Dr. Jones summed up plaintiff's condition by stating that it is a cyclic process. Plaintiff's mood dictates the level of impulsivity, the level of problems with his speech, the level of problems with judgment. If plaintiff is anxious or sleep deprived, his weaknesses like impulsivity and word finding problems worsen, and plaintiff will seem more distracted.
13. Dr. Jones noted that the problems and changes plaintiff experienced due to his head injury, as well as no longer being able to be the sole provider for his family, caused stress on his marriage. Dr. Jones suggested that plaintiff take up golf and go to his son's business. Additionally, she recommended that he volunteer his time, since unlike a job, if he had problems, he could just walk away from volunteer activities. This would give him opportunities to get out of the house, and to interact with people, without putting him in a work situation that would lead to failure if he could not handle the situation. Dr. Jones also stated that "working" with his son would not be a problem because if he messed up, it is not going to matter because it is family.
14. Dr. Jones was presented the video surveillance obtained by the defendants and viewed this during her deposition. After viewing the videos, Dr. Jones testified that the activities she observed plaintiff performing did not change her opinion as to the limitations he would have in a work environment due to his closed head injury. *Page 7 
15. Dr. James Pawlowski began treating plaintiff in January 2001. Dr. Pawlowski stated that when he first began treating plaintiff, he noted that he had a temper, problems with attention and concentration, being impulsive, and had word finding problems, and some depression. Dr. Pawlowski noted in December 2006 that plaintiff continued to have problems with his temper and was sensitive to criticism. Dr. Pawlowski encouraged plaintiff to be active with his family, to help his son with his business, and to get exercise, and do yard work.
16. Dr. Pawlowski had the opportunity to review the surveillance video commissioned by defendants. Despite what was shown on the video, Dr. Pawlowski's opinions regarding Plaintiff's condition and his abilities did not change. Dr. Pawlowski opined that the concentration or focus plaintiff needed to hit a golf ball or to sweep was much less than he needed to perform a higher order function. Dr. Pawlowski further opined that plaintiff will continue to have problems with memory, planning, abstract thought, concentration, and will become irritable easily. In Dr. Pawlowski's opinion, plaintiff cannot work consistently either part time or full time. As Dr. Pawlowski explained, plaintiff may demonstrate the physical, but not the cognitive ability to engage in sustained employment.
17. In January 2007, Dr. Pawlowski recommended that plaintiff have additional neuropsychological assessment by Dr. Jones as Dr. Pawlowski was changing plaintiff's medications. Dr. Jones was prepared to conduct this testing; however, the carrier did not approve it.
18. Dr. C. Thomas Gualtieri, who is a very reputable neuropsychiatrist, examined plaintiff once on January 26, 1999. Dr. Gualtieri found that plaintiff had severe neuropsychological deficits. He was of the opinion that plaintiff had white matter disease. Dr. Gualtieri also was of the opinion that although plaintiff had sustained a relatively mild injury, *Page 8 
plaintiff's fall at work aggravated the white matter disease, causing a more aggravated and lingering response. No brain MRI was ever performed to conclusively prove the diagnosis of white matter disease.
19. Dr. Gaultieri found no evidence that plaintiff was exaggerating his performance or that he was malingering. Plaintiff's results on the test performed by Dr. Gaultieri corroborated results found by Dr. Jones.
20. Dr. Gaultieri has not examined Plaintiff since this one exam in January 1999. Although Dr. Gualtieri is very reputable, under these circumstances, Dr. Gaultieri had nothing new to offer. The Full Commission finds that Dr. Gaultieri is not in the best position to form opinions regarding the plaintiff's current mental condition or disability some seven plus years after his last exam and consultation.
21. Dr. Jones and Dr. Pawlowski have treated plaintiff for over ten years and are well acquainted with his medical history and progress. Dr. Pawlowski and Dr. Jones were both of the opinion that plaintiff would not be able to "work" in a normal job situation. Plaintiff continues to remain out of work and is receiving temporary total disability benefits.
22. Having considered all the medical evidence of record, the greater weight shows that while plaintiff may be physically capable of working he remains cognitively disabled. Thus, the Full Commission finds that plaintiff is unable to return to any sustained employment either on a part time or full time basis.
23. Furthermore, the evidence shows that plaintiff continues to need psychiatric treatment and management of his closed head injury. Plaintiff remains on medication for his cognitive problems, and ongoing medical management is needed. *Page 9 
24. As the insurer brought this appeal, the Full Commission finds the award of attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88
to be reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On October 27, 1997, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer when he slipped and fell on the cement floor of defendant-employer's service department. N.C. Gen. Stat. § 97-2(6).
2. Initially, a claimant must prove both the extent and degree of disability. Brown v. S N Communications, Inc., 124 N.C. App. 320, 329,477 S.E.2d 197, 2002 (1996). However, once disability is proven, there is a presumption that disability continues until the employee returns to work at wages equal to those he was receiving at the time his injury occurred. Radica v. Carolina Mills, 113 N.C. App. 440, 447,439 S.E.2d 185, 190 (1994). In this case, plaintiff was found to be disabled pursuant to the October 17, 2001 Opinion and Award and is entitled to the presumption of continuing disability.
3. After the presumption attaches, the burden shifts to the employer to show that plaintiff is employable. Saums v. Raleigh CommunityHosp., 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997). Due to cognitive deficits sustained in the closed head injury of October 27, 1997, plaintiff remains unable to earn wages in any employment on a consistent and ongoing basis. Defendants have not shown that plaintiff has regained wage-earning capacity and plaintiff is therefore entitled to ongoing compensation for total disability. N.C. Gen. Stat. § 97-29. *Page 10 
4. There is substantial likelihood that plaintiff will require further medical treatment as a result of his compensable injuries. N.C. Gen. Stat. § 97-25.1.
5. Plaintiff is in need of ongoing psychiatric management for his closed head injury and defendants shall continue to pay for the treatment being rendered by Dr. Pawlowski and Dr. Jones, including the neuropsychological testing recommended by Dr. Pawlowski. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Plaintiff's counsel is entitled to continue to receive every fourth check as an attorney's fee. N.C. Gen. Stat. § 97-90.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by insurers when the Commission orders the insurer to make or continue payments of compensation to the injured employee.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay Plaintiff compensation at the rate of $532.00 per week until further Order of the Commission.
2. Defendants shall pay all future medical expenses incurred by Plaintiff as a result of his compensable injury, including psychiatric and psychological treatment, and further testing recommended by Dr. Pawlowski.
3. Defendants shall pay directly to Plaintiff's counsel twenty-five percent (25%) of the plaintiff's ongoing compensation for total disability. Defendants shall pay directly to plaintiff's counsel every fourth check. *Page 11 
4. The plaintiff within thirty days of the entry of this Opinion and Award shall provide the Commission with an affidavit and itemized statement of hours spent in the defense of this appeal before the Full Commission. The Commission, by separate Order, will thereafter provide for fees and costs pursuant to N.C. Gen. Stat. § 97-88.
5. Defendants shall pay the costs.
This the 1st day of May, 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER